MATHEW HOBSON, APPELLANT, *v.* THE HEIRS OF DUNCAN M'ARTHUR, DECEASED, APPELLEE.

It was agreed between M'A. and H. that M'A. should withdraw the entries of ten thousand acres, part of eleven thousand six hundred and sixty-six acres, which had been located for the use of H., and should relocate the same elsewhere; and that the ten thousand acres, the entries of which had been withdrawn, and the ten thousand acres relocated elsewhere by M'A., should be valued by two disinterested persons, one to be chosen by each party, and if the two could not agree on the value of the land or any part thereof, they should choose a third person, who should agree on the value of the land, and that H. should have so much of the land relocated as should amount to the value of the land for which the locations had been renewed; and also to the value of two thousand dollars in addition to the value of the ten thousand acres. The two persons appointed could not agree as to the value of part of the land, and they nominated a third person. Of the three persons thus appointed, two only agreed as to the value of part of the land. By the Court: It is an unreasonable construction of this agreement, that it was so framed as that it not only might fail to accomplish the very object intended; but, that in all probability it must fail, and become entirely negatory, as the third man was not to be called in until the two had disagreed. It is, a more reasonable construction to consider the third man as an umpire to decide between the two that should disagree. This would insure the accomplishment of the object the parties had in view. The valuation by the two appraisers was within the submission.

Where there is an original delegation of power to three persons, for a mere private purpose, all must agree; or the authority has not been pursued.

The Court under the prayer in a bill in Chancery for general relief, will grant such relief only as the case stated in the bill and sustained by the proof will justify.

ON appeal from the Circuit Court of the United States, for the district of Ohio.

In the Circuit Court of Ohio, a bill was filed by Duncan M'Arthur, asking for a specific performance of a contract, dated the 10th of November, 1810. The complainant and the defendant, with John Hobson, entered into certain articles of agreement relative to the withdrawal of the entries of land in the state of Ohio, and the re-entry thereof on other lands, out of which, by the contract between the parties, compensation was to be made in the lands included in the relocation of the lands, of which the entries had been withdrawn. The value of the lands, the entries of which were, by the agreement, to be withdrawn, and of the

land on which the entries were to be relocated, were to be determined by persons mutually chosen and agreed upon; who, if they could not agree, were to nominate a third person.

Out of this agreement, and proceedings under it, the questions in this case arose, and were argued by Mr. Stanbery, for the appellant, and by Mr. Mason, for the appellees, the heirs of Duncan M'Arthur, who became parties to the proceedings on the decease of Duncan M'Arthur. In the Circuit Court a decree was given in favour of the complainant, Duncan M'Arthur; and the defendant, Mathew Hobson, prosecuted this appeal.

The case is fully stated in the opinion of the Court.

The question decided by the Court was as to the construction of the agreement of the parties, to submit the value of the land to the determination of persons mutually chosen and agreed upon, and if they could not agree that they should appoint a third person.

Mr. Stanbery, for the appellant, contended that the decree of the Circuit Court is erroneous, in setting aside the appraisement of M'Arthur's surveys.

The contract of November 10, 1810, provides for an appraisal of the lands entered by Langham, and the lands entered by M'Arthur, "by two disinterested men, one to be chosen by each of the contracting parties; and if the said two men cannot agree on the price of the said lands, or any part thereof, the said two men are to choose a third man, who, together with the other two, shall agree on the price of said land."

It appears that the two appraisers first viewed the Langham entries, and disagreeing as to their value, called in Lyne Starling as a third man; and the three concurred in an appraisement of these lands; but differing in the value of the M'Arthur entries, an award as to their value was made by Starling and one of the appraisers, without the concurrence of the other appraiser.

Mr. Stanbery argued that the intention of the parties to the contract, was, that the third man was to act as an umpire, not as a third arbitrator.

He admitted that the rule is well settled that all the arbitrators must concur, unless the submission provides for an award by a majority.

But this was not a submission to three arbitrators.   The sub-mission is to two, and it is only in the event of their inability to agree, that the third man is to intervene.   For what purpose? Not, certainly, to add to the difficulty by a new and discordant opinion, but to settle it by his decision.

It was not necessary to the validity of the award that the two arbitrators should concur with the umpire, or that either of them should concur with him; and the circumstance that the award is signed by one of the arbitrators as well as by the umpire, does not vitiate.   Watson on Arbit. 64.

2. But if the appraisement of the M'Arthur surveys cannot be sustained, the whole award is void; and the decree of the Circuit Court is erroneous in sustaining the appraisement of the Langham entries.

The express language of the contract is, that " the land from which the ten thousand acres is to be withdrawn as located by Elias Langham, and also the land to be re-entered by M'Arthur, is to be valued by two disinterested men," &c.

Besides this specific enumeration of the matters submitted, it is obvious that nothing short of an appraisement of both sets of entries would avail; for the object was to fix the relative values, and that could only be accomplished by a valuation of both.

The arbitrators must respond to all matters specifically sub-mitted, especially where there is a dependency and necessary connexion in the matters submitted.

Mr. Mason, for the appellees.

1. The mode of ascertaining the value of the lands is provided for in the contract.

Each party is to choose one man; and if the men thus chosen cannot agree, they " are to choose a third man, who, together with the other two, shall agree on the price of the land."

It was doubtless competent for the parties to agree that the concurrence of the whole number of appraisers should be requisite to constitute a valid appraisement of the land.   There is no ambiguity in the terms of the contract.   They do expressly require that the three men should "agree on the price."   And they all did agree as to the price of the lands located by Lang-

[Hobson *v.* M'Arthur.]

ham. But only two agreed in appraising the lands entered by M'Arthur.

The question is, whether the appraisement made by two is valid in law?

There is a difference in this respect between a private authority, and a public trust and duty; in the former case, all must join; in the latter, the power to several is well executed by the majority: "unless it be expressly provided in the submission, that a less number than all the arbitrators named may make the award, the concurrence of all is necessary." Kid on Awards, p. 106; Watson on the Law of Arbitration, p. 85, ed. 1836; Grindley *v.* Barker, 1 Bos. & Pul. 229; Cortes *v.* Kent Waterworks Company, 7 Barn. & Cres. 314; Rex *v.* Whitaker, 9 Barn. & Cres. 648; Dalling *v.* Mitchell, Barnes, 57, Willes, 215, S. C.; Green *v.* Miller, 6 Johns. 40; Berry *v.* Penning, Cro. Jac. 100, 399; Fellowes *v.* Girling, Cro. Jac. 277; 5 Dane's Ab. 562.

2. The appraisement was also invalid because the agent transcended his authority in two particulars, viz.: 1st, In having more land appraised than was required to pay the debt: and 2d, In having other lands appraised than those described in the power of attorney, under which he derived his authority. The power of attorney was in conformity with the terms of the contract.

3. It was void for uncertainty in this, to wit: That the contract required the appraisement to be made in such a manner that Hobson could have released his title to the residue of the land not appraised; whereas the appraisers proceeded to value more than thirty-six thousand dollars' worth of land to pay a debt of nine thousand two hundred and fifty dollars.

The appraisement, therefore, was made in such a manner as to render it impossible for Hobson to comply with that essential part of the contract, which required him to convey to M'Arthur all the land that would remain after deducting the quantity required to pay the debt due to himself.

But Hobson was not content to have as much land, and no more, set off and appraised as was necessary to pay the debt; nor did he have all the lands entered by M'Arthur appraised. Without having all appraised, he would have nearly four times as much appraised as was required to discharge his claim.

Certainly the Court cannot find in such acts of capriciousness, a compliance with the letter or spirit of the contract.

A question naturally arises on this branch of the case, who had the right to select the land for appraisement? Was the right vested in the appraisers? or in the parties jointly? or in one of them, and which? It is answered, in the debtor. M'Arthur claimed this right, and asserted it in the letter of attorney to his son.

The privilege of choice is not in the creditor in such cases.

The contract provided, in case of a deficiency of land to pay the debt, that M'Arthur should give other lands, &c. These other lands he undoubtedly had a right to select.

But, supposing the appraisement of the M'Arthur entries to be void, what effect will that have on the appraisement of the Langham entries?

"If a thing be awarded to be done, which is bad for uncertainty, or as being beyond the submission, or for any other objection; and this part of the award does not form a consideration for the performance of the matter awarded on the other part, and is distinct and independent thereof; then the award is only void for so much."

Though formerly otherwise, "nothing now is more clear, than that an award may be bad in one part, and yet good and binding in another part." Watson on the Law of Arbitration, pp. 190, 191.

Assuming, therefore, that the appraisement, so far as it respected the M'Arthur entries, was void for any one or all the reasons assigned, and valid as to the residue; I proceed to inquire what decree the complainants are entitled to ask for.

M'Arthur had a right, by the contract, to pay in land or money, at his option; and on payment being made or tendered, in either mode, he had a right to require Hobson to release.

Every stipulation to pay a debt in specific property is presumed to be made in favour of the debtor; and therefore, he may, in all cases, pay the debt in money in lieu of the property which, for the ease of the debtor, the creditor had agreed to receive. Chipman on Cont., pp. 31, 32, 34, 44; 2 Kent's Com. 400.

The contract, in its legal effect, was a purchase of the warrants for a sum of money thereafter to be ascertained in the mode pre-

[Hobson v. M'Arthur.]

scribed by the contract, and to be paid in land or money, at the option of M'Arthur. It was the same in substance as a contract to pay so much money: for instance, one hundred dollars in wheat or cattle.

This argument is not weakened by the fact that the warrants were to be re-entered in the name of Hobson; because the only object the parties could have had in the provision, requiring the entries to be made in the name of Hobson, was to afford him security for the performance of the contract on the part of M'Arthur.

But if M'Arthur had not the right of election, which is contended for, but on the contrary could have been compelled in a Court of Equity to pay in land; then it is maintained that the conduct of Hobson has released him from that obligation; and deprived himself of the right, if he ever had a right, to demand payment in property.

M'Arthur offered to pay in money, or to appoint another appraiser on his part, which Hobson refused. This appears in the record.

The principle is, that an offer to do a thing is so far equivalent to performance, that it will entitle the person making it to demand whatever he was to have upon the performance. 2 Lord Raym. 961; Hotham v. East India Company, 1 Term Rep. 645; Parker v. Parkenhorne, 2 Wash. C. C. Rep. 142; 15 Petersdorff, Marg. p. 24; Daug. Marg. pp. 259, 559.

The interpretation of the contract which is contended for, was not fully sustained by the Court below.

That Court set aside the appraisement of M'Arthur's entries, and directed the parties to re-appoint other appraisers. But, if Hobson should neglect or refuse to appoint, he was ordered to release his interest in the lands on receiving the sum of nine thousand two hundred and fifty dollars, to be paid by M'Arthur. He did refuse to appoint another appraiser. And he had before received a larger sum in money than he was entitled to have, as was shown by the confidential contract.

If the appraisement was properly set aside, and Hobson would not appoint another appraiser, and he had twice refused to do it, he was bound to release on payment or tender of the money.

What other decree could have been made?

Mr. Justice THOMPSON delivered the opinion of the Court.

This case comes up from the Circuit Court of the United States for the district of Ohio. The bill filed in the Court below is founded upon, and seeks a specific execution of the following agreement, bearing date the 10th of November, 1810.

"It is hereby agreed upon between Duncan M'Arthur, of Ross county, and state of Ohio, of the one part, and John Hobson, of Jackson county, and state of Georgia, and Mathew Hobson, of Oglethorpe county, and state of Georgia, aforesaid, on the other part, witnesseth, that, whereas, eleven thousand six hundred and sixty-six and two-third acres were sent to Col. Richard C. Anderson's office, on or about the first instant, by Col. Elias Langham, in the name and for the use of said John and Mathew Hobson, with entries for the same. Now be it known, that it is hereby understood and agreed upon by the contracting parties, that said M'Arthur is to withdraw ten thousand acres of the eleven thousand six hundred and sixty-six and two-third acres, and to relocate the said ten thousand acres elsewhere, in the name of the said John and Mathew; and it is further agreed upon by the contracting parties, that the land from which the said ten thousand acres is to be withdrawn, as located by Elias Langham, and also the land to be re-entered by said M'Arthur, is to be valued by two disinterested men, one to be chosen by each of the contracting parties, and if the said two men cannot agree on the price of said lands, or any part thereof, the said two men are to choose a third man, who, together with the other two, shall agree on the price of said land, and the said Hobsons are to have so much of said land, so to be relocated by said M'Arthur, as will amount to the value of the land from which said warrants shall have been removed, and also land to the amount and value of two thousand dollars, in addition to the value of the ten thousand, and where the same was entered by Elias Langham; and the said John and Mathew Hobson doth hereby obligate themselves, their heirs, executors, and administrators, separately and jointly, to convey unto the said M'Arthur, his heirs, &c., all and singular the balance of said ten thousand acres, after deducting therefrom such quantity as by valuation as aforesaid will amount to the value of the said ten thousand acres, where the same was first located by said Langham, and also land to the value of two thousand dollars, as

aforesaid; and it is further understood and agreed upon, that if the lands located by the said M'Arthur, should not be valued to the amount of the lands so located by said Langham, and also two thousand dollars, then, and in that case, said M'Arthur is to convey unto the said John and Mathew, their heirs, &c., other lands to the amount of said valuation, with the value of two thousand dollars in land as aforesaid, said Hobson to pay all office fees and surveying expenses. Said valuation to take place on or before the expiration of three and a half years from the date hereof; said Hobson to pay the taxes on said lands until divided; and then the said M'Arthur to pay to the said Hobson his proportionable part of said taxes.

In witness whereof, we, the contracting parties, do hereunto set our hands and seals, this 10th day of November, A. D. 1810.

Be it remembered before signing, that the division of said lands shall take place forthwith, after the titles are considered secure, and that the lands located by Langham, are to be picked as he upon his honour intended.

Signed          DUNCAN M'ARTHUR, [L. S.]<br>
JOHN & M. HOBSON, [L. S.]

Witness:
> E. LANGHAM,
> EDWARD BASKERVILLE.

The bill, after having set out substantially this contract, states, that John Hobson, on the 24th of November, 1818, sold and assigned to the complainant all his right and title to one-half (five thousand acres) of the land warrants located by him. That in pursuance of said agreement, he withdrew ten thousand acres of Langham's entries, and located them elsewhere. That on the 30th of July, 1830, he appointed his son, Thomas J. M'Arthur, his attorney, to transact the business under the said contract; who, in pursuance of said power, appointed, on his part, William Vance, to proceed in the valuation of the said lands. And that for the same purpose Mathew Hobson appointed Mathew Bonner, who proceeded to view the land; and finding that they could not agree on the value, they selected Lyne Starling, as a third man, to make the appraisement, pursuant to the terms of the agreement, who, together with Vance and Bonner, agreed upon the valuation of the lands located by Langham. The complain-

ant further states, that, afterwards, his agent proposed to the said Mathew Hobson, to select and point out to the appraisers for valuation, such parts of the entries made by M'Arthur as would amount to a sufficient quantity to satisfy the said Hobson, which proposition he declined, and insisted that it was his right to have the whole of the lands entered by the complainant valued. That he was entitled to an interest in the whole of the entries made by the complainant, proportional to the valuation of the Langham entries. The bill states that afterwards the three appraisers proceeded to examine the lands relocated by M'Arthur, and that two only of the appraisers, Bonner and Starling, agreed on the valuation. And the bill then charges that the said valuation has not been made in conformity to the said agreement; in this, that the said three appraisers have not all agreed as to the value of the lands relocated by the complainant, but that only two agreed thereto. Several other charges are made against the validity of this appraisement, which it is unnecessary to notice. The bill then sets out several proposals made by the complainant for the settlement of the controversy, which he declined accepting, and refused making any conveyance or assignment of his interest in the land located by the complainant. The bill, then, for the purpose of obtaining an injunction, refers to an act of Congress, of the 26th of May, 1830, for the settlement of the conflicting claims of the complainant and the United States, to the land in question; and charges that the defendant Hobson threatens to apply to the government for the appraised value and interest of five thousand acres of the land, entered in the name of the said Mathew Hobson; and prays that he may be enjoined from claiming and receiving from the treasury of the United States any part of the money appropriated by the act of Congress, until the same is heard and adjudicated upon by the Court. And further, praying that the said Hobson may be decreed to accept some one of the terms proposed by him, in fulfilment of the contract, according to its true intent and understanding. And that he may be compelled to perform the said agreement specifically, on his part, as the complainant has proposed and tendered to do on his part; and such other and further relief as may seem meet and just.

The answer of Hobson admits the contract of the 10th of November, 1810, set out in the bill; and that he is willing to abide

by the same, according to the just interpretation thereof. He admits the appointment of appraisers, and their proceeding to the valuation of the land, as stated in the bill; and that thereupon he informed the complainant of his willingness to settle all matters under the contract; and that after taking and retaining such proportion of the lands entered by the complainant, and valued as set out in the bill and answer, as would cover, and include the claims of him, the defendant, under the contract and agreeable to such valuation, he was willing, and then offered to assign and relinquish to the complainant, the rest and residue of the lands so valued, and also all the other entries and surveys made by the complainant; which he wholly refused to do. The defendant admits that he rejected all the demands and requisitions of the complainant made at the time alluded to, and all the demands which had for their object and design a disregard in part or in whole of the doings of the appraisers. The defendant admits the passage of an act of Congress mentioned in the bill, and that he means to avail himself of its provisions, if he can obtain a settlement of the matter with the complainant; but he is prevented by the complainant from relinquishing his interest in the lands to the United States. And he denies the right of the complainant to confine him to any particular part of either of the surveys, valued by the appraisers; but that when it is ascertained what number of acres he is entitled to under the contract and valuation, then he will hold the same undivided and in common with the complainant, until by partition it shall be divided. And he denies the right of the complainant to pay off and settle with him in a given sum of money. That he is perfectly willing to abide by the valuation made by the appraisers, and relinquish his claim as before offered.

An interlocutory decree was thereupon entered, declaring that the appraisement made by only two of the appraisers of the relocated entries and surveys made by M'Arthur was void, and ordered the same to be set aside and annulled; and then proceeds to give directions for another appraisement, which the defendant Hobson refused to comply with; and thereupon a final decree was entered, declaring that the complainant, M'Arthur, had complied on his part with the interlocutory decree, and that the respondent Hobson had altogether neglected to comply with

the same on his part; and alleging that the sum of nine thousand two hundred and fifty dollars had been paid by M'Arthur to Hobson, as appeared by his receipt annexed to the agreement of the 25th of September, 1830. It was thereupon ordered, adjudged, and decreed, that the said Hobson should within sixty days after the rising of the Court, by a good and sufficient deed, transfer and assign to Duncan M'Arthur, his heirs and assigns, all his right, title, and interest in the ten thousand acres of land relocated and surveyed by the said Duncan M'Arthur; and that in case he should fail to comply with this decree, within the time thereby limited, then that the decree should operate as such conveyance. And from this decree the present appeal is taken.

The first and principal question in the case is, whether the appraisement or valuation of the land was made pursuant to the provisions of the contract of the 10th of November, 1810. If it was, then the decree in this respect is erroneous. And it was the fault of the complainant that the contract was not carried into execution; and he cannot come now to ask for a specific execution of it.

The agreement was, that the land located by Langham, from which the ten thousand acres were to be withdrawn, and also the land to be re-entered by M'Arthur, should be valued by two disinterested men, one to be chosen by each of the contracting parties; and in case the two men thus chosen could not agree on the price of said lands, then they were to choose a third man, who, together with the other two, shall agree on the price of the said lands. The parties in pursuance of the agreement, each chose a man to make the valuation, and upon their disagreement with respect to the same, they chose a third man, and the whole three thereupon agreed as to the valuation of the Langham location, but disagreed in the valuation of the M'Arthur location; and the valuation was made by Starling and Bonner, two of the appraisers: and it is contended that this valuation was void, because made by two only.

It has been argued, that this being a delegation of power to the three, for a mere private purpose, all must agree, or the authority has not been pursued. This may be admitted to be the rule, where the original delegation of the power is to the three, without any other provision on the subject. But in construing

[Hobson v. M'Arthur.]

this agreement, we must look at what was the obvious intention of the parties. The parties clearly intended, that the valuation should at all events be made. A third man was not to be called in unless the two disagreed; and it is an unreasonable construction of this agreement that it was so framed that it not only might fail to accomplish the very object intended, but that in all probability it must fail and become entirely nugatory, as the third man was not to be called until the two had disagreed. Upon the construction of the agreement, that the three must unite in the valuation, the office to be performed by the third man was to persuade the other two to agree with him. This could never have been the understanding of the parties. It is a more reasonable construction to consider the third man in the character of an umpire, to decide between the two that should disagree. This would insure the accomplishment of the object the parties had in view. But a contrary construction would most likely defeat that object.

Upon this view of the agreement, the valuation by two of the appraisers was within the submission.

It has also been made a question whether the whole of the land re-entered by M'Arthur was to be valued, or only so much as was to be retained by Hobson. The terms of the submission would seem to settle this question. It expressly provides that the land from which the ten thousand acres, located by Langham, was to be withdrawn, and also the land to be re-entered by M'Arthur, were to be valued, &c., and this must have been the understanding of the parties in order to make a just partition between them.

There is no provision made for the selection of any particular part to be appraised. By whom, then, was such part to be designated? But when the whole of each tract is valued, the proportion which Hobson is to have in the M'Arthur location is easily ascertained; and they would become tenants in common, subject to partition, according to their respective rights. Such is the clear construction of this agreement. It does not contemplate the sale of the land or the division of any proceeds therefrom. A reference in the bill to the act of Congress of the 26th of May, 1830, (4 Story's Laws, 2197,) appears to be for the purpose of obtaining an injunction to restrain Hobson from receiving any money from the treasury of the United States, appropriated b

that act. But the bill is not framed with a view to enforcing any rights growing out of that act, but prays that Hobson may be compelled to perform the agreement of the 10th of November, 1810, twenty years before that act was passed. It is true, that there appears upon the record, an agreement entered into between these parties, bearing date the 25th of September, 1830, relative to a division of the money to be paid by the government under this act. But this was an agreement made after the commencement of this suit, and which we cannot notice for several reasons. If any relief is to be given on the basis of that agreement, it should have been brought before the Court below, by a supplemental bill. But another insuperable objection is, that by an express stipulation in the agreement, it is not to be made use of in this case. This stipulation is as follows: "The said parties mutually agree and covenant, that this contract and agreement shall not be used by either of them, nor at any time held or interpreted in the suit aforesaid, or in any other suit, or in any other Court, or in any proceedings, whether in Court or out of Court, under the aforesaid contract, (the contract of the 10th of November, 1810,) as affecting, changing, or in anywise disturbing the rights of either in the matters aforesaid; but the suit aforesaid shall be conducted, and any other suit which either of them may think proper to bring, founded on the contract aforesaid, may and shall be conducted, in all respects, as though this contract had not been entered into."

In addition to this, the counsel on both sides declined, upon the argument, making any use whatever of this agreement. It must, therefore, be dismissed, as having no bearing upon the case. And if so, there is no proof whatever that Hobson had received any money on account of his land. The defendant, Hobson, was under no obligations to accept either of the propositions of the complainant, as stated in the bill. There is nothing in the contract of 1810 that called upon him to do this; and especially after he had, on his part, complied with the provisions of that contract. And if the agreement of 1830 is laid out of view, there is no proof to show that Hobson had received nine thousand two hundred and fifty dollars, as is assumed in the decree, and made the ground upon which he is ordered to transfer and assign to M'Arthur, all his right, title, and interest in the whole ten thousand

[Hobson *v.* M'Arthur.]

acres of land, relocated and surveyed by M'Arthur. This could not have been done under the prayer for general relief. The Court, under this prayer, will grant such relief only as the case stated in the bill, and sustained by the proofs will justify. The frame and structure of the bill in this case is for a specific execution of the contract of the 10th of November, 1810, which provides only for the valuation of the lands, and makes no provision for the sale of the land or the payment of any money. And if the facts would justify a prayer for any such relief, the bill should have been framed with a double aspect; so that if the Court should decide against the complainant in one view of the case, it might afford him relief in another. But this bill is not so framed.

The decree of the Circuit Court, must, therefore, be reversed. But, as the rights of the heirs of M'Arthur may depend, in some measure, upon the contract of the 10th of November, 1810, connected with what has since taken place, under the act of Congress, we think the bill ought to be dismissed, without prejudice.

It is accordingly adjudged and ordered, that the decree of the Court below be reversed; and the cause remanded to the Circuit Court, with directions to dismiss the bill, without prejudice.