**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-1554**

———————

NORFOLK SOUTHERN RAILWAY COMPANY,

Plaintiff - Appellee,

v.

ZAYO GROUP, LLC,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, Senior District Judge.  (1:21-cv-01299-LO-JFA)

———————

Argued:  October 25, 2023                                Decided:  December 8, 2023

———————

Before HARRIS and QUATTLEBAUM, Circuit Judges, and Kenneth D. BELL, United States District Judge for the Western District of North Carolina, sitting by designation.

———————

Affirmed by published opinion.  Judge Quattlebaum wrote the opinion, in which Judge Harris and Judge Bell joined.

———————

**ARGUED:**  William H. Hurd, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Richmond, Virginia, for Appellant.  Tobias S. Loss-Eaton, SIDLEY AUSTIN LLP, Washington, D.C., for Appellee.  **ON BRIEF:**  Annemarie DiNardo Cleary, Cody T. Murphey, Richmond, Virginia, Charles A. Zbedski, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Washington, D.C., for Appellant.  Gordon D. Todd, Cody L. Reaves, Stephen S. Laudone, SIDLEY AUSTIN LLP, Washington, D.C., for Appellee.

———————

QUATTLEBAUM, Circuit Judge:

When two companies agree to a method for resolving their disputes, they are bound by their contract. An internet provider, Zayo Group, LLC, entered such an agreement when it leased a utility duct from Norfolk Southern Railway Company. When it came time to renew the lease, Zayo and Norfolk Southern could not agree to the renewal rent. As the lease instructed, they submitted the dispute to three appraisers, who decided the rent by a two-to-one vote. But because the appraisers did not unanimously agree, Zayo refused to pay that rent. Norfolk Southern sued for breach of the lease and moved to confirm the appraisal as an arbitration award under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. After confirming the appraisal, the district court entered judgment on the pleadings for Norfolk Southern, ordering Zayo to pay the rental amount determined by the appraisers. Regardless of whether the district court properly confirmed the appraisal under the FAA, the lease was a contract and bound Zayo to pay the amount set by the appraisers, even if not decided unanimously. Since Zayo did not pay that amount, we affirm the judgment on the pleadings.

I.

To supply internet, Zayo operates a fiber optic cable buried in a two-inch duct running along nearly twenty-five miles of railroad in Virginia. Zayo pays rent to use the duct under a lease that the railroad company, Norfolk Southern, executed in 1999 with a corporation called Metromedia Fiber Network Services, Inc. Zayo acquired Metromedia in 2012. The lease provided for an initial twenty-year term, with rent starting at $8,000 per

mile per year, for a total nearing $200,000 per year. The lease also gave Zayo the option of renewing for two ten-year terms. Rent for those renewal terms was to be adjusted to "reflect the fair market value" of the leased interest. J.A. 94.

Section 4(b) of the lease provided a process for determining that rent:

> b) Rental for the Renewal Term(s)(the "Adjusted Rental") shall reflect the fair market value of this Lease, which shall mean the fair rental value of the Leased Facilities and the rights granted herein for the Renewal Term for the uses permitted herein; provided, however, that in no event shall the Adjusted Rental be less than the Rental (or Adjusted Rental) as adjusted pursuant to Section 4(c) in effect immediately prior to a Renewal Term. Lessor initially shall propose the Adjusted Rental and shall notify Lessee thereof during the last six (6) months of the Initial Term or preceding Renewal Term. If Lessee objects to Lessor's proposed Adjusted Rental, Lessee at its sole cost will obtain and submit to Lessor an appraisal by an MAI member within sixty (60) days of Lessor's notice. If Lessor disagrees with Lessee's appraisal, Lessor at its sole cost will obtain a second appraisal by an MAI member. If Lessee's and Lessor's appraisers cannot reach agreement, they will select, and Lessor and Lessee will jointly compensate, a third appraiser similarly qualified, and the three shall determine the Adjusted Rental within sixty (60) days of the third appraiser's selection, which determination shall be final and binding. During the period of any appraisal(s), Lessee shall continue paying the Rental (or Adjusted Rental) in effect during the Initial Term or the preceding Renewal Term, and upon final determination of the Adjusted Rental, shall pay any excess due.

J.A. 94. Critically, if two party-appointed appraisers could not agree on the adjusted rent, the appraisers would jointly select a third appraiser, whom both parties would compensate, and "the three shall determine" the new rent with "final and binding" effect. J.A. 94. During this process, the lease required Zayo to continue paying the prior rent and to pay "any excess due" upon the "final determination" of the new rent. J.A. 94.

When Zayo first sought to renew the lease in April 2019, Zayo and Norfolk Southern could not agree on the adjusted rent. Under section 4(b) of the lease, Norfolk Southern proposed a rate in late 2019, and Zayo objected. Zayo failed to offer a counter appraisal within the required sixty days under section 4(b). While Norfolk Southern believed that

3

Zayo's delay breached the lease, the parties resolved that timing dispute by amending the lease in April 2020. The amendment extended Zayo's appraisal deadline to September 2020 in exchange for "Extension Payments." J.A. 111–12. And the amendment acknowledged that, even though Zayo had yet to provide its own appraisal, Norfolk Southern had commissioned and completed an appraisal, constituting the "second appraisal" under section 4(b). J.A. 112. The amendment also detailed a process for jointly selecting the third appraiser: if Norfolk Southern's and Zayo's appointed appraisers could not agree on the adjusted rent within thirty days of their initial consultation, Norfolk Southern's appointed appraiser had ten business days to provide a list of three possible appraisers, all of whom must have been "Members of the Appraisal Institute," to Zayo's appointed appraiser, who would have an additional ten business days to select a name from the list. J.A. 85; J.A. 112. Once the third appraiser had been selected, the three appraisers were to "proceed as prescribed by Section 4(b)" of the lease. J.A. 112.

After the party-appointed appraisers reached a stalemate, Norfolk Southern provided three possible third appraisers to Zayo, which picked one. In corresponding about engaging the third appraiser, the parties expressed disagreement about section 4(b) of the lease. Zayo claimed that section meant the parties would be bound only by a unanimous decision of all three appraisers, while Norfolk Southern said a majority decision would suffice. Having registered their disagreement, the parties permitted the appraisal to proceed.

The appraisers reached a "Panel Determination" by a two-to-one vote. J.A. 67. Over the dissent of the appraiser appointed by Zayo, the other two appraisers agreed that the rent

4

for the renewal term should begin at $2,340,000 per year. Norfolk Southern sought to collect, issuing two invoices. Zayo did not pay in full, maintaining that a nonunanimous decision was not binding.

Norfolk Southern sued Zayo to recover the rent due on a breach of contract theory, invoking the district court's diversity jurisdiction.[1] *See* 28 U.S.C. § 1332. Norfolk Southern then moved to confirm the appraisal as an arbitration award under the FAA. *See* 9 U.S.C. § 9. Less than a week later, Norfolk Southern filed its operative amended complaint, alleging breach of contract and seeking both damages for Zayo's past failure to pay and a declaration that Zayo owed the panel-determined amount moving forward.

The district court confirmed the appraisal as an arbitration under the FAA. In doing so, the district court rejected Zayo's argument that the appraisal panel could act only unanimously. First, the court concluded, "[A]n interpretation of the contract that requires the appraisal panel's decision to be unanimous is inconsistent with the plain language of the contract." J.A. 258. Alternatively, the district court decided that the appraisers could decide for themselves whether to return a finding based on a majority vote rather than a unanimous one since, according to the district court, that call fell within the appraisers' purview as arbitrators. Having confirmed the appraisers' decision under the FAA, the district court directed Norfolk Southern "to file a motion for judgment pursuant to Federal Rule of Civil Procedure 58 which identifies the amount of the award owed and any interest that [Norfolk Southern] seeks." J.A. 260.

---

[1] Separately, Zayo initiated a state proceeding seeking to obtain the duct outright by condemnation. That case is the subject of the related appeal in Case No. 22-1837.

In response, Norfolk Southern moved for "judgment on the pleadings and entry of judgment" under Rule 12(c) and Rule 58 of the Federal Rules of Civil Procedure. J.A. 261. Treating the motion as one for judgment on the pleadings, the district court entered judgment on the railroad's breach of contract and declaratory judgment claims. While the district court invoked its earlier arbitration decision, it relied on breach of contract principles, emphasizing that the parties remained "bound by the terms of the duct lease as agreed," including the rent-setting mechanism of section 4(b). J.A. 265. Accordingly, the court ordered Zayo to pay Norfolk Southern $4,390,904.79, representing unpaid rent plus contractual interest. The district court also ordered that the appraisal panel's rental rate would remain in effect for the rest of the renewal term.

## II.

On appeal,[2] Zayo argues that it was not bound by the panel's rent determination because the appraiser it selected dissented. Norfolk Southern responds that a majority vote binds the parties under the lease. Alternatively, Norfolk Southern counters that the appraisers themselves decided that they could act by majority vote and that the appraisers were empowered to make that call in their capacity as arbitrators. *See Dockser v. Schwartzberg*, 433 F.3d 421, 425–26 (4th Cir. 2005) (deferring to arbitrators on "procedural questions" not resolved by the arbitration agreement that "grow out of the

---

[2] Zayo timely appealed from the district court's final judgment, which falls within our appellate jurisdiction under 28 U.S.C. § 1291.

6

dispute and bear on its final disposition"). While Zayo and Norfolk Southern dispute whether the appraisal process qualified as an arbitration and whether, by litigating breach of contract, Norfolk Southern waived its FAA rights, they agree that Zayo breached the lease if the lease itself did not require unanimous action by the appraisers.[3] Since the lease imposed no such unanimity requirement, we need not, and do not, look any further.

Like other contracts, we interpret the lease de novo. *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010). The lease specified that Virginia law governs its interpretation. Under Virginia law, we "must give effect to the intention of the parties as expressed in the language of their contract." *Martin & Martin, Inc. v. Bradley Enters., Inc.*, 504 S.E.2d 849, 851 (Va. 1998) (quoting *Rash v. Hilb, Rogal & Hamilton Co.*, 467 S.E.2d 791, 794 (Va. 1996)). We cannot look beyond a contract's language absent ambiguity. *Amos v. Coffey*, 320 S.E.2d 335, 337 (Va. 1984) ("[W]hen the parties set out the terms of their agreement in a clear and explicit writing then such writing is the sole memorial of the contract and . . . the sole evidence of the agreement." (quoting *Durham v. Pool Equip. Co.*, 138 S.E.2d 55, 59 (Va. 1964))).

---

[3] In answering Norfolk Southern's amended complaint, Zayo raised various "affirmative defenses." J.A. 149–50 (asserting that (1) the amended complaint failed to state a claim; (2) the unpaid invoices were invalid because they were not based on a unanimous decision; (3) Norfolk Southern could not issue valid invoices since it breached the lease's rent-appraisal process; (4) Norfolk Southern failed to mitigate its damages; (5) the lease is ambiguous; and (6) the rent is unconscionable). And Zayo "counterclaimed" that Norfolk Southern breached the lease by sending invoices based on the nonunanimous appraisal. J.A. 155–56. Zayo did not press those arguments when Norfolk Southern moved for judgment on the pleadings. Nor does Zayo resuscitate them now. To the contrary, Zayo conceded at oral argument that we have nothing more to do but affirm if we decide that the lease did not require the appraisers to reach unanimity.

The lease is unambiguous. It provides that, within 60 days of the third appraiser's selection, "the three [appraisers] shall determine the Adjusted Rental . . . , which determination shall be final and binding." J.A. 94. The lease does not limit or specify how the appraisers could "determine" the rental value. Zayo contends that the appraisers could determine the rent only by unanimous vote, while Norfolk Southern says that a majority vote sufficed. However, a contract is not ambiguous simply because the parties offer opposing interpretations. *Wilson v. Holyfield*, 313 S.E.2d 396, 398 (Va. 1984). Rather, to lead to ambiguity, the opposing interpretations must both be "reasonable," that is, "'equally possible' given the text and context of the disputed provision." *Erie Ins. Exch. v. EPC MD 15, LLC*, 822 S.E.2d 351, 355–56 (Va. 2019). It is unreasonable to interpret the lease's silence as limiting the appraisers to unanimous decision-making.

Logically read, the lease introduced a third appraiser to break ties. Ordinarily, "determining" an issue means definitively resolving it, no matter the mechanism. *See e.g.*, *Determine*, *Random House Webster's College Dictionary* (2d rev. ed. 2000) (defining "determine" to mean "to settle or resolve (a dispute, question, etc.) by an authoritative or conclusive decision"). The contract also demonstrates the parties' desire not to drag out the rent determination. Section 4(b) of the lease provided a timeline for each step of the process. When Zayo missed its deadline to provide an appraisal, the parties amended the lease, giving Zayo an extension in exchange for payments and compressing the timeline. And greasing the skids, the amendment specified steps for appointing the third appraiser— the appraiser appointed by Norfolk Southern was to provide three options to the appraiser appointed by Zayo, who then would have ten business days to select a name from the list.

8

Now complaining that this selection method disadvantaged it, Zayo contends that it would have agreed to such a method only if it had believed unanimity were required. However, Zayo's subjective belief about the 2020 amendment does not establish what the lease in fact means.[4] Instead, we look to the text of the written agreement. And the amendment changed nothing about the original lease's appraisal process beyond the third appraiser's selection. Once again, section 4(b) provides that "the three [appraisers] shall determine the Adjusted Rental," without dictating any limitations on how they do so. J.A. 94.

That the 2020 amendment may have given Norfolk Southern the upper hand in selecting the third appraiser does not create any ambiguity in the text of the lease. As to why Zayo agreed to that particular change, who knows? Changing the selection method was but one of several compromises enshrined in the amendment. Perhaps Zayo settled on the selection method to extract other favorable terms, like the extension. Or perhaps Zayo simply agreed to a bad deal. In the end, why Zayo agreed to the amendment doesn't really matter. It is our job to enforce contracts, not to speculate about the parties' possible motives for entering into them. So, we decline to examine only one aspect of the bargained-for exchange, now tinted by hindsight. And we decline to judicially impose a requirement into the lease—unanimity—that the parties did not include in their agreement.

The logic of the appraisal sequence, considered as a whole, suggests that the third appraiser's role was to break a tie. The third appraiser is appointed only if the other two

---

[4] In fact, Zayo had yet to enter the picture when Norfolk Southern agreed to the lease in 1999 with Metromedia, which Zayo acquired only in 2012.

9

have deadlocked. If unanimity were required, an appraiser appointed by a single party could indefinitely hold up the process, regardless of whether the lease contemplated a third appraiser. Such a result would render the third appraiser redundant and defy the parties' express purpose of "determining" the rent. *See Wilson*, 313 S.E.2d at 398 ("The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used." (quoting *Meade v. Wallen*, 311 S.E.2d 103, 104 (Va. 1984), and *Magann Corp. v. Elec. Works*, 123 S.E.2d 377, 381 (Va. 1962))). Thus, a unanimity requirement does not follow from a reasonable reading of the lease.

This logic is nothing new. Almost two hundred years ago, the Supreme Court utilized similar reasoning in *Hobson v. McArthur*, 41 U.S. (16 Pet.) 182 (1842). That case involved an agreement for valuing land whereby each party was to choose one "disinterested" appraiser, but, "in case the two men thus chosen could not agree on the price of said lands, then they were to choose a third man, who, together with the other two, should agree on the price of the said lands." *Id.* at 192. Despite the language that the third man was to decide "together with the other two," *id.*, the Court concluded that the third appraiser served as a tiebreaker because allowing a majority vote "would insure the accomplishment of the object the parties had in view," while requiring unanimity "would most likely defeat that object" since the third appraiser "was not to be called, until the two had disagreed." *Id.* at 193. Similarly, the Norfolk Southern lease directed "the three" appraisers to "determine the Adjusted Rental." J.A. 94. As in *Hobson*, the lease, logically read, tasked the third appraiser with breaking the stalemate.

10

Zayo counters that requiring unanimity would not necessarily result in eternal stalemate. It hypothesizes that instructing the panel to reach a unanimous decision might galvanize the panel to agree. *Id.* If not, Zayo suggests that a new panel could be chosen. *Id.* If the stalemate persists, Zayo claims that Norfolk Southern could bypass it by later returning to court on a quantum meruit theory. *Id.* But this is all speculation, as none of it appears in the lease. To the contrary, the lease directs the appraisers to "determine" the rent, without tying their hands to a particular decision-making method. Nothing in the lease implies a unanimity requirement that would stymie its rent-determining objective. *See Hobson*, 41 U.S. at 192–93. Rather, the only reasonable meaning of the lease is that the third appraiser was meant to break the tie, unambiguously allowing the panel to determine the rent by majority vote.

Undeterred, Zayo turns to extrinsic evidence and interpretive norms, but neither can overcome the lease's unambiguous meaning. First, Zayo invokes extrinsic evidence from years before the lease's execution. *See Eure v. Norfolk Shipbuilding & Drydock Corp.*, 561 S.E.2d 663, 667–68 (Va. 2002) ("[W]hen a contract is ambiguous, the Court will look to parol evidence in order to determine the intent of the parties."). Over a decade before Zayo's lease was first executed, Norfolk Southern entered a lease with a predecessor of Sprint Communications Company. Like Zayo's lease, the Sprint lease provided a three-appraiser mechanism for deciding fair rental value, but, unlike Zayo's lease, it expressly specified that a majority vote would suffice to decide the issue. *Id.* Even so, because the

lease is not ambiguous, as just discussed, we cannot consider Zayo's extrinsic evidence, regardless of its persuasive power or lack thereof.[5] *See Amos*, 320 S.E.2d at 337.

For that same reason, we resist Zayo's invitation to interpret the provision's language against Norfolk Southern, which Zayo says drafted it.[6] *See Martin & Martin*, 504 S.E.2d at 851 ("In the event of an ambiguity in the written contract, such ambiguity must be construed against the drafter of the agreement."). That practice applies only as a tool of last resort to resolve persistent ambiguities. *See Donnelly v. Donatelli & Klein, Inc.*, 519 S.E.2d 133, 140 (Va. 1999) (concluding that the interpretive tool did not apply when the contract was not ambiguous); *see also Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019) ("The rule applies 'only as a last resort' when the meaning of a provision remains ambiguous after exhausting the ordinary methods of interpretation."); 11 *Williston on Contracts* § 32:12 (4th ed. May 2023 update) ("The rule of *contra proferentem* is generally said to be a rule of last resort and is applied only when other secondary rules of interpretation have failed to elucidate the contract's meaning."). Since the lease is not ambiguous, the interpretive tool has no place here.[7]

---

[5] And likely Zayo's extrinsic evidence would not have much persuasive power. After all, a single lease executed with an unrelated entity in 1987 would not provide much guidance as to the meaning of the Zayo lease executed in 1999.

[6] Zayo charges Norfolk Southern with drafting the at-issue provision but admits that its only evidence of that charge is the railroad's failure to deny it. We need not resolve the drafter's identity. Whether or not Norfolk Southern drafted the provision, the provision unambiguously does not require unanimity.

[7] Even if the principle of *contra proferentem* were to apply, it likely would not apply with full force to this commercial lease negotiated between sophisticated entities. *See*

Ambiguity is one thing; breadth quite another. Broadly, the lease directed the three appraisers to "determine" the rental rate, without specifying limitations. J.A. 94. Virginia law precludes us from reading into the lease "language which will add to or take away from the meaning of the words already contained therein." *Wilson*, 313 S.E.2d at 398. Accordingly, we will not narrow the lease's broad terms by imposing an unstated requirement that would frustrate the lease's purpose. *See City of Chesapeake v. Dominion SecurityPlus Self Storage, LLC*, 785 S.E.2d 403, 406–07 (Va. 2016) (holding that a Virginia circuit court erred in implying a foreseeability requirement to limit a contract's "broad" waiver of "any claim for damages"). Therefore, under the lease, a rent decision reached by a majority of the appraiser panel binds Zayo. Once the appraisers reached such a decision, the lease obligated Zayo to "pay any excess due." J.A. 94. By refusing to pay that full amount, Zayo breached the lease.

## III.

The lease's plain language resolves this rent dispute. So, we do not opine on whether the lease's dispute-resolution mechanism amounted to an arbitration under the FAA. Regardless of whether the district court erroneously confirmed the appraisal as an arbitration award, the parties remained bound by the lease's unambiguous terms. Because

---

*Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co*, 867 F.2d 809, 814 (4th Cir. 1989) (attaching "no significance" to which party drafted the arbitration language because the contract was negotiated at arms' length through "able and experienced counsel" on behalf of "sophisticated" parties); 11 *Williston on Contracts* § 32:12 (stating that application of the rule may vary based on "the degree of sophistication of the contracting parties or the degree to which the contract was negotiated").

13

Zayo did not abide, it breached. On that basis and that basis alone, *see RLM Commc'ns, Inc. v. Tuschen*, 831 F.3d 190, 195 (4th Cir. 2016) ("We may affirm 'on any legal ground supported by the record and are not limited to the grounds relied on by the district court.'" (quoting *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir. 1993))), the district court's ultimate judgment directing Zayo to pay the rent determined by the appraisers is

*AFFIRMED*.

14