COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Chaney and Senior Judge Annunziata
Argued by videoconference

SCHOOL BOARD FOR THE CITY OF RICHMOND

MEMORANDUM OPINION* BY
v.        Record No. 1474-22-2          JUDGE VERNIDA R. CHANEY
                                        DECEMBER 12, 2023

MARK EMERICK LEE, JR.

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Jacqueline S. McClenney, Judge

Stephen B. Moncrieffe (Harrell & Chambliss, LLP, on brief), for
appellant.

No brief or argument for appellee.

The School Board for the City of Richmond (School Board) appeals the trial court's order

granting the warrant in debt of its former employee, Mark Emerick Lee, Jr.  The School Board

argues that the trial court erred in (1) asserting jurisdiction over Lee's appeal from the City of

Richmond General District Court (GDC) because Lee did not serve the School Board with the

notice of appeal and did not timely pay the writ tax, costs, and other fees; (2) denying the School

Board's motion to strike and granting Lee relief he did not seek when it resolved a contractual

ambiguity in Lee's favor; (3) concluding that the contract between the parties was ambiguous;

(4) concluding that the School Board drafted the contract; (5) applying an incorrect standard of

review when construing the contract in Lee's favor; and (6) denying the School Board's motion to

(a) modify the effective date of the final order to a date reflecting when the School Board received

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

the trial court's order in the mail or, alternatively, (b) suspend the final order to provide the School Board with additional time to file a motion for reconsideration.

The issues on appeal were addressed in three trial court hearings held on June 8, 2022, June 28, 2022, and August 19, 2022. But the School Board did not make a transcript or written statement in lieu of transcript part of the record for any of those hearings. Consequently, this Court's review of the School Board's assignments of error is limited to those issues for which the omitted transcripts are not indispensable.

For the following reasons, this Court affirms the trial court's judgment.

BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." *Nielsen v. Nielsen*, 73 Va. App. 370, 377 (2021) (quoting *Congdon v. Congdon*, 40 Va. App. 255, 258 (2003)).

In December 2020, Lee entered an employment contract with the School Board, providing Lee with a salary of $35,284 "prorated for the duration of the contract." The contract, entitled "Annual Contract With Professional Personnel," stated that it "cover[ed] the period" of January 5, 2021 through June 30, 2021. In May 2021, the School Board dismissed Lee from his employment.

Lee filed a warrant in debt in the GDC on August 24, 2021, seeking $15,154.03. Subsequently, on October 12, 2021, Lee filed a bill of particulars alleging that the School Board failed to pay him $35,284 as specified in his contract. The School Board filed grounds of defense, arguing that Lee's "allegation as to his 'pay [being] different from the agreement' lacks the requisite level of specificity to warrant a response." (Alteration in original). In response, Lee filed another bill of particulars on November 9, 2021, asserting that his contract—provided to him by the School Board—required the School Board to pay him $35,284 over the six-month term of his employment

- 2 -

and further asserting that the School Board failed to pay him in accordance with the terms of the contract.

The GDC hearing on Lee's warrant in debt was originally scheduled for January 4, 2022, but the School Board requested a continuance. However, due to inclement weather, the courthouse was closed on January 4. Upon being contacted by the clerk's office on January 5, the School Board "agreed to continue [the] case to March 24, 2022." The School Board subsequently noticed a hearing on Lee's warrant in debt for March 24, 2022. The GDC form recording the warrant in debt shows both the original January 4, 2022 hearing date and the March 24, 2022 hearing date.

After the GDC found in favor of the School Board on March 24, 2022, Lee noticed his appeal to the circuit court that same day. Lee subsequently paid the required writ tax, costs, and other fees on April 25, 2022.[1]

On June 21, 2022, the School Board filed a motion to dismiss. The School Board argued that although Lee timely noted his appeal, he failed to timely remit the writ tax. The School Board alleged that Lee paid the writ tax 32 days after the GDC judgment dated March 24, 2022, and, therefore, the GDC had no authority to transmit the case to the circuit court. The School Board claimed that because Lee failed to timely perfect his appeal, the trial court did not have jurisdiction to hear the appeal.

The School Board also filed a motion for a continuance, alleging that Lee "failed to effectuate service of his appeal notice" on the School Board before June 8, 2022, the date on which the parties were supposed to appear before the trial court. The School Board stated that it was not notified of the hearing until the court clerk's office called to ask why it missed the June 8, 2022 hearing. The School Board agreed at that time to a June 28, 2022 hearing on its motion to dismiss,

---

[1]As explained in Analysis Section II.B of this opinion, the "March 23, 2022" date-stamp next to the judge's signature on the GDC final order is an obvious clerical mistake.

- 3 -

but requested a further continuance for additional time to prepare for trial should the trial court deny its motion to dismiss.

The parties convened for a hearing on the School Board's motions on June 28, 2022.[2]  As stated in the trial court's August 29, 2022 opinion and order, the trial court denied the School Board's motion to dismiss and granted the School Board's motion for a continuance.  The trial court found that Lee timely perfected his appeal because the 30-day deadline fell on a day that, under Code § 1-210, extended the 30-day filing period.  The trial court continued the matter to August 19, 2022.

On August 19, 2022, the parties appeared for trial.[3]  The court heard evidence from Lee and examined the exhibits, including the contract.  The School Board presented no evidence.  Lee "requested $15,154.03 as the difference between the salary he received and the salary he was entitled to receive for the hours he worked under the contract."  Lee argued that he was entitled to a total salary of $35,284, prorated over the six-month period of his contract.  The School Board argued that the contract provided for an *annual* salary of $35,284, prorated and reduced by half to reflect Lee's six-month employment term.  The trial court held that the contract did not "contain the word 'annual' in reference to the salary amount," but rather stated that the salary was $35,284 "prorated for the duration of the contract."  The trial court found that there were "two ways to look at this failure to use the word 'annual' in the contract: it is either an absence that renders the meaning of the contract clear that the agreement was for $35,284 distributed over the period of January 5 through June 30, 2021, or the contract is ambiguous."  The trial court held that if the

_____

[2] The record does not include a transcript, or a written statement in lieu of transcript, of this hearing.

[3] The record does not include a transcript, or a written statement in lieu of transcript, of this hearing.  However, the trial court's August 29, 2022 opinion and order includes a detailed account of the arguments made and evidence considered at the August 19, 2022 hearing.  The facts recited here are based on that order and other record documents.

contract is ambiguous, because the School Board "drafted the contract and as the contract fails to state that the $35,284 is an annual salary to be prorated," the court could not construe the ambiguity against Lee. The trial court granted Lee's warrant in debt in the amount of $15,154.03, and entered an order memorializing its ruling on August 29, 2022.

The School Board filed a motion to modify the August 29, 2022 order on September 15, 2022. The School Board alleged it did not receive the final order in the mail until September 12, 2022. The School Board asked the trial court to modify the effective date of the order to September 12, 2022, to reflect the date the order was received so that the School Board would have sufficient time to file a "Motion to Reconsider the Court's ruling in favor of Plaintiff" within the 21-day jurisdictional limit of Rule 1:1. Alternatively, the School Board asked the trial court to suspend the effective date of the final order "indefinitely pending the scheduling of a hearing" on its motion. The School Board's motion to modify did not proffer any ground for reconsideration or include the motion for reconsideration. On September 16, 2022, the trial court denied the School Board's motion to modify its order. The trial court stated that it had informed the parties it would enter its order by August 31, 2022, and had actually entered the order on August 29, 2022. The trial court noted it did not receive another filing in the case until the School Board's motion to modify the order was filed on September 15, 2022. The trial court stated that granting the motion would create "legal fiction" and that the School Board's "sole reason for requesting the Court create a legal fiction as to the date of entry of the [circuit court's] August 29, 2022 [o]rder is to extend the applicable deadlines, allowing the [School Board] extra time for filings."

The School Board never filed a motion to reconsider. The School Board timely appealed to this Court.

ANALYSIS

I. The record does not include a transcript or written statement in lieu of transcript.

The record does not include a transcript for the June 28, 2022 hearing on the School Board's "Motion to Dismiss," the August 19, 2022 trial, or the September 16, 2022 hearing on the School Board's "Motion to Modify Court Order." Although the School Board filed a written statement in lieu of transcript in the trial court, that statement is not part of the record because it was not filed in accordance with the requirements of Rule 5A:8(c). Rule 5A:8(c) provides:

> A written statement of facts, testimony, and other incidents of the case becomes a part of the record when:
> (1) within 60 days after entry of judgment a copy of such statement is filed in the office of the clerk of the trial court. . . . ; and
> (2) the statement is signed by the trial judge and filed in the office of the clerk of the trial court.

The trial court entered judgment on August 29, 2022. The School Board's written statement was filed on November 10, 2022, more than 60 days later. *See* Rule 5A:8(c)(1). Moreover, the School Board did not move for an extension of time to file its written statement. Although Rule 5A:8(c), unlike the rule for filing transcripts under Rule 5A:8(a), does not provide for any extension to the 60-day deadline, Rule 5A:3(b) provides that "the times prescribed in these Rules for filing papers, except transcripts (Rule 5A:8(a)), may be extended by a judge of the court in which the papers are to be filed on motion for good cause shown." A motion for such an extension would only have been timely if filed within 90 days of the trial court's judgment. *See* Rule 5A:3(c)(2) (for rules not providing a specific deadline for requesting an extension, a motion for an extension filed within 30 days of the deadline is timely). However, even if the School Board's November 10, 2022 filing of its written statement—less than 90 days after the trial court's August 29, 2022 judgment—is taken to include an implicit motion for an extension, an extension would not be authorized absent "good cause shown." *See* Rule 5A:3(b). The School Board's written statement in lieu of transcript does not state any cause for extending the 60-day filing deadline. Moreover, unlike extensions for filing

- 6 -

transcripts under Rule 5A:8(a)—which can be granted "by a judge of this Court"—extensions under Rule 5A:3 may be granted only by *a judge of the circuit court*. *See* Rule 5A:3(b) (authorizing extensions granted by "a judge of the court in which the papers are to be filed"). Because the School Board's written statement in lieu of transcript was not timely filed, the School Board did not establish prima facie compliance with the first two elements of Rule 5A:8(c), and the trial court was not obligated to consider it.[4] *See Clary v. Clary*, 15 Va. App. 598, 600 (1993) (remand for consideration of a written statement is inappropriate where party has not established prima facie compliance with Rule 5A:8(c)). Thus, the School Board's written statement in lieu of transcript is not part of the record. *See id.*

II. The trial court had jurisdiction over Lee's de novo appeal of the GDC judgment.

The School Board asserts that the trial court lacked jurisdiction to hear Lee's de novo appeal of the GDC judgment because it was not served with Lee's notice of appeal and Lee failed to pay the writ tax, costs, and fees within 30 days of the GDC judgment.

A. The School Board had sufficient notice of Lee's appeal.

The School Board first argues that the trial court erred in asserting jurisdiction over the School Board because of Lee's alleged failure to serve the notice of appeal on the School Board. The School Board asserts that it was not served with the notice of appeal and that the record does not reflect any proof of service of the notice of appeal. However, the record does not reflect that the School Board made any jurisdictional objection in the trial court based on Lee's failure to serve the notice of appeal. The School Board filed a "Motion to Dismiss" on June 21, but that motion did not

_____

[4] The two elements required to establish prima facie compliance with Rule 5A:8(c) are stated in Rule 5A:8(c)(1). First, a copy of the written statement in lieu of transcript must be filed in the office of the clerk of the trial court within 60 days of the judgment. *See* Rule 5A:8(c)(1). Second, a copy of the written statement must be mailed or delivered to opposing counsel on the same day that it is filed in the office of the clerk of the trial court, accompanied by notice that such statement will be presented to the trial judge no earlier than 15 days nor later than 20 days after such filing. *See Clary v. Clary*, 15 Va. App 598, 600 (1993); Rule 5A:8(c)(1).

contain any *jurisdictional* objection based on Lee's failure to serve the notice of appeal. The School Board's only objection to the alleged failure to serve the notice of appeal appears in its "Motion for a Continuance," filed contemporaneously with its "Motion to Dismiss." The School Board's "Motion for a Continuance" requested that the June 28 hearing date be continued based on the School Board's allegation that it did not receive the notice of Lee's appeal before June 8 and, consequently, it needed more time to "meet with key personnel" and prepare a defense. The trial court granted the requested continuance. The trial court's final order states that the School Board's motions were heard on June 28, 2022, but no transcript or written statement in lieu of transcript for that hearing is part of the record.

Moreover, unlike the deadline for filing a timely notice of appeal, other mandatory procedural requirements, such as service, have not been held to be jurisdictional. Considering Rule 5A:6(d), relating to the procedural requirement for perfecting a notice of appeal to this Court, the Supreme Court has held that "a failure to strictly adhere to the certification of notice to other parties requirement of Rule 5A:6(d) would not bar the Court from obtaining jurisdiction over the appeal where other aspects of the record showed that the party was advised that a timely notice of appeal had been filed." *Ghameshlouy v. Commonwealth*, 279 Va. 379, 392 (2010).

The requirements for perfecting a notice of appeal from the general district court to circuit court are stated in Code § 16.1-106. Code § 16.1-106(B) requires a party to satisfy the requirements for appeal stated in Code § 16.1-107. Code § 16.1-107(E) requires that the appellant:

> [S]hall[] within 30 days from the date of the judgment[] pay to the clerk of the court from which the appeal is taken the amount of the writ tax of the court to which the appeal is taken and costs as required by subdivision A 13 of § 17.1-275, *including all fees for service of process of the notice of appeal in the circuit court pursuant to § 16.1-112*.

(Emphasis added). Code § 16.1-112 provides that upon payment of the writ tax and other fees and costs:

- 8 -

The judge or clerk of any court from which an appeal is taken under this article shall promptly transmit to the clerk of the appellate court the case papers, which shall include the original warrant or warrants or other notices or pleadings with the judgment endorsed thereon, together with all pleadings, exhibits, and other papers filed in the trial of the case. The required bond, and, if applicable, the money deposited to secure such bond and the writ tax and costs paid pursuant to § 16.1-107 shall also be submitted, along with the fees for service of process of the notice of appeal in the circuit court. . . .

When such case has been docketed, *the clerk of such appellate court shall by writing to be served . . . by regular mail to [the appellee's] attorney, that such an appeal has been docketed* in his office[.] . . . *No such appeal shall be heard unless it appears that the [appellee's attorney] has had such notice, . . . 10 days before the date fixed for trial*, or has in person or by attorney waived such notice.

(Emphases added).

Code § 16.1-112 plainly authorizes the service of the School Board's attorney by regular mail. Moreover, Code § 16.1-112 provides that the circuit court clerk is responsible for serving the notice. Judicial officers, including clerks of court, are entitled to a presumption of regularity that, here, supports a finding that the notice of appeal was sent to the School Board's counsel by regular mail in accordance with Code § 16.1-112. *See Gilmore v. Landsidle*, 252 Va. 388, 396 (1996) ("In the absence of clear evidence to the contrary, this Court must presume that a public officer has properly discharged his official duties."); *Seaton v. Commonwealth*, 42 Va. App. 739, 757 (2004) (applying the presumption of regularity to the operations of a judicial clerk's office). Additionally, postal workers are accorded a presumption of regularity in the discharge of their duties. *Branham v. Commonwealth*, 283 Va. 273, 282 (2012) ("In the absence of clear evidence to the contrary, postal workers are entitled to a presumption of regularity in the performance of their duties."). On this record, there is *no evidence* rebutting the presumption that the trial court clerk mailed Lee's notice of appeal to the School Board's attorney by regular mail. Nor is there any evidence rebutting the presumption that the postal service delivered the notice of appeal to the School Board's attorney.

Moreover, even if the School Board did not receive the notice of appeal 10 days before the June 8 scheduled trial date, that defect was cured by the notice provided to the School Board on June 8 and the subsequent continuances. The prescribed time for serving the notice to the School Board's attorney is "10 days before the date fixed for trial." *See* Code § 16.1-112. Under Code § 8.01-288, the notice that the School Board—by its own admission—received on June 8 satisfies the service requirements of Code § 16.1-106. *See* Code § 8.01-288. Code § 8.01-288 provides that "process which has reached the person to whom it is directed within the time prescribed by law, if any, shall be sufficient although not served or accepted as provided in this chapter." Since the School Board had notice of Lee's appeal on June 8, 2022, well more than 10 days before the August 19, 2022 trial, the School Board received sufficient notice of Lee's appeal under Code § 16.1-112. Under these circumstances, any alleged defect in the manner of serving the School Board with notice of Lee's appeal did not deprive the trial court of jurisdiction. *See Ghameshlouy*, 279 Va. at 392.

### B. Lee's payment of the writ tax and other appeal-related fees was timely.

The School Board also contends that Lee's failure to pay the required writ tax, costs, and fees within 30 days of the GDC judgment barred the trial court's exercise of jurisdiction over Lee's appeal. It is undisputed that Lee paid the required writ tax, costs, and fees on Monday, April 25, 2022. The School Board, however, asserts that Lee failed to perfect his appeal because he paid the writ tax, costs, and fees "32 days after the entry of the Richmond GDC judgment." Op. Br. 15.

The requirements for perfecting an appeal to a circuit court from a general district court are set forth in Code § 16.1-107. *See* Code § 16.1-107 (stating mandatory bond and fee requirements for perfecting an appeal). Code § 16.1-107(E) provides that:

> In addition to the foregoing [bond requirements], any party applying for appeal shall, *within 30 days from the date of the judgment*, pay to the clerk of the court from which the appeal is taken the amount of the writ tax of the court to which the appeal is taken and costs as

required by subdivision A 13 of § 17.1-275, including all fees for service of process of the notice of appeal in the circuit court pursuant to § 16.1-112.

(Emphasis added). The Supreme Court has held that this requirement to pay the writ tax, costs, and fees "within 30 days of the judgment" is jurisdictional. *See Hurst v. Ballard*, 230 Va. 365, 367 (1985). As explained in *Hurst*:

> Unless the writ tax is paid to the district court clerk within 30 days from the judgment date, the district court has no authority to transmit the case to the circuit court . . . [,] the intended appeal is not perfected[,] and the circuit court does not obtain jurisdiction.

*Id.* The School Board's reliance on *Hurst* is misplaced because, as explained further below, Lee timely paid the required writ tax, costs, and fees for service of process of the notice of appeal.

### 1. The general district court entered final judgment on March 24, 2022.

Although, before the GDC and the trial court, the School Board repeatedly asserted that the date of the GDC trial was March 24, 2022, the School Board now, for the first time on appeal, asserts that the GDC entered final judgment on March 23, 2022—the day *before* the March 24, 2022 GDC trial. If the GDC judgment was entered on March 23, 2022, then Lee's failure to pay the required writ tax, costs, and fees by Friday, April 22, 2022—30 days later—would indeed have barred the trial court from exercising jurisdiction over Lee's appeal. *See id.* But the GDC did not enter judgment the day before the March 24, 2022 GDC trial, and the School Board's contrary contention relies on an obvious clerical mistake.

Although there appears to be a conflict in the record regarding the date of the GDC's judgment, the record—as a whole—clearly demonstrates that the correct date is March 24, 2022. The GDC final order states that the hearing was held on March 24, 2022, but "March 23, 2022" is date-stamped next to the GDC judge's signature. The stated "DATE OF FINAL ORDER" on Lee's notice of appeal is March 24, 2022, but the stated "JUDGMENT DATE" on the notice of appeal is March 23, 2022. The GDC deputy clerk's notes relating to a continuance of the originally

- 11 -

scheduled January 4, 2022 GDC trial date state that the School Board agreed to a March 24, 2022 hearing date, and "3/24 @ 1 p.m. SD" is handwritten and initialed on two pages of the School Board's request for a continuance. The School Board subsequently filed a "Notice of Hearing" for March 24, 2022, at 1:00 p.m.

Before the trial court, the School Board filed a motion to dismiss stating "This matter comes before the City of Richmond Circuit Court on appeal from a March 24, 2022 judgment from the [GDC] in favor of Defendant." The School Board's motion to dismiss further stated that Lee paid the writ tax, costs, and fees on "April 25, 2022; 32 days after the entry of judgment by the GDC." April 25, 2022, is 32 days from March 24, 2022. The trial court's final "Opinion and Order" entered August 29, 2022, denies the School Board's motion to dismiss based on an express finding that the day that is 30 days from the date of the GDC judgment fell on a weekend, consistent with a March 24, 2022 judgment date, and inconsistent with a March 23, 2022 judgment date. Thirty days from March 23, 2022, is Friday, April 22, 2022.

As amply demonstrated by the foregoing record facts, before the GDC and the trial court, the School Board consistently represented that the GDC hearing and judgment occurred on March 24, 2022. The School Board's contention on appeal that April 25, 2022, the date on which Lee paid the writ tax, fees, and other costs, is 32 days after the GDC judgment further supports a March 24, 2022 judgment date. On this record, there can be no doubt that the "March 23, 2022" date stamp adjacent to the GDC judge's signature on the GDC final judgment is a clerical mistake. *See* Code § 8.01-428(b) (authorizing the correction of clerical mistakes in judgments on the court's own initiative at any time); *see also Smith v. Commonwealth*, 59 Va. App. 710, 721 n.3 (2012) (Rule 3.3 of the Rules of Professional Conduct imposes on all counsel a professional duty of candor to accurately represent the record to this Court).

*2. Lee's April 25 payment of the writ tax, costs, and fees was timely.*

Lee's April 25, 2022 payment of the required writ tax, costs, and fees was timely because the 30-day payment deadline fell on a Saturday and was extended two days by statute to the following Monday. The GDC entered final judgment on March 24, 2022. Lee timely filed his notice of appeal that day. As stated on the notice of appeal, Lee was required to pay $143 for the writ tax, costs, and fees within 30 days of March 24, 2022, the GDC judgment date. *See* Code § 16.1-107(E). Thirty days from March 24, 2022, is Saturday, April 23, 2022.[5] Lee paid the $143 fee due on Monday, April 25, 2022. Although Monday, April 25, 2022 is 32 days from March 24, 2022, the 30-day April 23, 2022 deadline is extended two days to Monday, April 25, 2022 by Code § 1-210. *See* Code § 1-210 (computation of time). Code § 1-210, in relevant part, provides:

> When the last day for performing an act during the course of a judicial proceeding falls on a Saturday, . . . the act may be performed on the next day that is not a Saturday, Sunday, legal holiday, or day or part of a day on which the clerk's office is closed as authorized by an act of the General Assembly.

Code § 1-210(B). Since April 23, 2022—the last day for Lee to timely pay the fees—fell on a Saturday, Code § 1-210 authorized Lee to pay on Monday, April 25, 2022. Thus, Lee's payment on April 25, 2022, was timely and the School Board's contention that the trial court lacked jurisdiction to hear Lee's appeal is incorrect.

---

[5] In accordance with Code § 1-210(A), days are counted starting with the day *after* the March 24, 2022 judgment.

- 13 -

III. The trial court did not err in awarding Lee damages for unpaid wages.

The trial court did not err in awarding Lee damages for unpaid wages based on Lee's employment contract (Contract).[6] As stated in the trial court's opinion and order, Lee argued that the School Board was obligated to pay $35,284 prorated over the six-month Contract term. The School Board contended that $35,284 was Lee's *annual* salary to be prorated to half that amount because of Lee's six-month employment term. The critical contractual payment terms are provided in section 11 of the contract. Contract § 11 provides:

> 11. The School Board agrees to pay Employee $35,284
> (Grade-109 Step-11) prorated for the duration of the contract:
>
> > (a) in School Board established installments for services rendered,
> > payable in accordance with established payroll schedules.
> > (b) This contract covers the period (01/05/2021 thru 06/30/2021)
> > prorated and is in compliance with and subject to the school
> > calendar . . . .

Construing this provision, the trial court concluded that the School Board's promise to pay $35,284 "prorated for the duration of the contract" required the School Board to pay Lee $35,284 for the six-month duration of his term, prorated based on services rendered and the School Board's payroll schedules. In response to the School Board's argument that $35,284 is an annual salary, and thus corresponding to the amount due for 12, not 6, months of service, the trial court observed that the School Board had not qualified the Contract salary with the word "annual." Without the word "annual," the trial court concluded that "the plain reading of the Contract is that the $35,284 to be paid for [Lee's labor] is to be paid over the period of the contract and not by lump sum payment."

---

[6] Although the lack of a transcript or written statement in lieu of transcript precludes this Court's review of any issues that depend on arguments made or evidence orally presented at the August 19, 2022 trial, the trial court's August 29, 2021 opinion and order is sufficiently detailed to permit this Court to review the trial court's outcome-determinative contractual rulings. *See Turner v. Commonwealth*, 2 Va. App. 96, 99 (1986) ("If the record on appeal is sufficient in the absence of the transcript to determine the merits of the appellant's allegations, we are free to proceed to hear the case.").

The trial court further reasoned that even if the School Board's omission of the word "annual" created a contractual ambiguity, the ambiguity would have to be resolved against the School Board because the School Board drafted the contract.

"The interpretation of a contract is a question of law that this court reviews de novo." *Bolton v. McKinney*, 299 Va. 550, 554 (2021) (citing *Schuiling v. Harris*, 286 Va. 187, 192 (2013)). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Id.* (quoting *Schuiling*, 286 Va. at 192).

"The question whether the language of a contract is ambiguous is a question of law which we review de novo." *Robinson-Huntley v. George Washington Carver Mut. Homes Ass'n, Inc.*, 287 Va. 425, 429 (2014) (quoting *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 263 Va. 624, 631 (2002)). "Contract language is ambiguous when it may be understood in more than one way or when it refers to two or more things at the same time. However, a contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." *Id.* (quoting *Eure*, 263 Va. at 632).

"When an agreement is plain and unambiguous on its face, the Court will not look for meaning beyond the instrument itself." *Id.* (quoting *Eure*, 263 Va. at 632). However, when a contract is ambiguous, the Court can consider parol evidence in order to determine the intent of the parties. *See id.*; *Shevel's, Inc.-Chesterfield v. Se. Assocs., Inc.*, 228 Va. 175, 182 (1984) (parol evidence exclusion applies to *unambiguous* contracts). "The plaintiff then bears the burden of proving that the parties intended the meaning that results in a breach of contract by the defendant." *Robinson-Huntley*, 287 Va. at 429 (citing *Eure*, 263 Va. at 631). "Whether the plaintiff has met that burden is a question of fact, and 'we will only reverse the finding of the trial court if it is plainly wrong or without evidence to support it.'" *Id.* at 429-30 (quoting *Eure*, 263 Va. at 631).

The School Board contends that the trial court's interpretation—that section 11 of the Contract provides for the payment of $35,284 for six months of work—impermissibly renders the contractual term "prorated" meaningless. This Court disagrees with the School Board. The word "prorate" generally means "to divide, distribute or assess proportionally." *See Merriam-Webster's Collegiate Dictionary* 997 (11th ed. 2004). As explained by the trial court, the contractual requirement that the total wages be "prorated for the duration of this contract" means that the amount owed to Lee is paid in prorated installments instead of a lump sum. This interpretation accords with Contract § 11(a) providing that payments are to be made in "School Board established installments for services rendered, payable in accordance with established payroll schedules." Determining the amount of each such installment requires prorating $35,284 over the part of the six-month contract period covered by each installment.

Moreover, Contract § 11(b) provides that the Contract "covers the period (01/05/2021 [through] 06/30/2021) prorated." Adopting the same meaning of the word "prorated" as in the phrase "$35,284 . . . prorated," Contract § 11(b) means that the contractual terms stated for the six-month duration of the contract are "prorated" to determine how those terms apply to each part of the six-month term. The School Board contends that "$35,284 prorated" means that the stated salary requires some adjustment to determine Lee's actual compensation. Uniformly applying that interpretation to Contract § 11(b) suggests that prorating the employment term "01/5/2021 to 06/30/2021" means adjusting that date range to determine Lee's actual employment term. But the only Contract terms relating to adjusting the term of employment depend on indefinite contingencies arising from early termination. For example, Contract § 7 authorizes the School Board to dismiss an employee upon recommendation of the division superintendent, Contract § 9 authorizes discontinuance of employment, and Contract § 10 authorizes the employee to request release from the Contract after giving notice. None of these provisions provide any principled way

to adjust the stated term of employment. Thus, interpreting the term "prorated" to require an adjustment of the term of employment would render an important term of the contract indefinite. *See Reid v. Boyle*, 259 Va. 356, 367 (2000) (the law disfavors a contract construction that has a tendency to render a contract indefinite).

Contract § 11(e) provides additional support to the trial court's interpretation. Contract § 11(e) provides:

> In the event this contract is terminated by mutual consent prior to the end of the contract period, payment will be made for services rendered for days worked on a daily rate basis to be determined by *dividing the salary stipulated in this contract by the number of days covered* under the provisions of this contract.

(Emphasis added). Contract § 11(b) states that the Contract *covers* days in the range "01/05/2021 [through] 06/30/2021." The only salary stipulated in the Contract is $35,284. Thus, in accordance with Contract § 11(e), termination on June 30, 2021, would fix Lee's daily compensation rate at $35,284 divided by the number of covered work-days in the period January 5, 2021, through June 30, 2021. This calculation accords with the interpretation that "$35,284 . . . prorated" means that the stated salary is earned and payable over the six-month duration of the Contract.

Having determined that the plain reading of the Contract supports interpreting $35,284 to be the stipulated salary for six months, the Contract would have to be impermissibly amended to support the School Board's contrary construction. The School Board's contention that $35,284 is an *annual* salary for a full one-year employment term would require modifying Contract § 11 to read "The School Board agrees to pay Employee *an annual salary of* $35,284 . . . prorated for the duration of the contract." Even then, to support the School Board's construction of "prorated," the Contract's salary term "$35,284 . . . prorated for the duration of the contract" would have to be further interpreted to mean "$35,284 . . . *to be* prorated for the duration of the contract." Otherwise, even if the School Board is correct that "prorated" implies a reduction in an annual salary amount to

reflect Lee's six-month employment term, the plain use of "prorated" in the *past tense* suggests that the reduction of Lee's salary to account for his six-month term was already performed to determine the stated $35,284 amount. But contracts are "construed as written, *without adding terms* that were not included by the parties." *See PMA Cap. Ins. Co. v. US Airways, Inc.*, 271 Va. 352, 358 (2006) (emphasis added).

To support its contention that the stated contract salary is an *annual* salary, the School Board relies on the Contract title "Annual Contract With Professional Personnel," and Contract § 11(c) which specifies that "the minimum length of this contract shall be 260 days." While we agree with the School Board that the minimum 260-day duration specified in Contract § 11(c) is longer than six months, and we also agree that the title of the Contract is consistent with an annual contract, those general contract terms do not override the plain meaning of either the specific six-month duration term or the specific salary term at issue. Specific provisions of a contract govern over provisions that are more general in nature. *See Mutual Life Ins. Co. v. Hill*, 193 U.S. 551, 558 (1904) ("where there are two clauses in any respect conflicting, that which is specially directed to a particular matter controls in respect thereto over one which is general in its terms"); *see also Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 573 (2011); *Asphalt Roads & Materials Co. v. Commonwealth*, 257 Va. 452, 460 (1999) (Lacy, J., concurring) ("specific section of the contract overrides the more general contract provisions"). Moreover, the full text of Contract § 11(c) makes clear that this section of the School Board's Contract does not apply to Lee's employment. Contract § 11(c), in full, provides:

> (c) The minimum length of this contract shall be 260 days as follows:
> (1) 180 *teaching* days; and
> (2) up to 80 days for activities such as *teaching*, participating in professional development, planning, evaluating, completing records and reports, *participating in committees and conferences*, or other such activities as may be assigned or approved by the School Board or the division superintendent.

(Emphasis added). Plainly, this contract provision applies to *teaching* positions, not Lee's "Automotive Mechanic Technician I" position.

Assuming, without deciding, that the School Board's proposed construction—that $35,284 is an *annual* salary to be prorated or reduced based on Lee's six-month contract duration—is a *reasonable alternative* interpretation of the Contract, that interpretation would at most render the Contract ambiguous. *See Robinson-Huntley*, 287 Va. at 429 (Contract language is ambiguous when it can be understood in more than one way.). An ambiguous contract "*must be construed against the drafter* of the agreement." *Martin & Martin, Inc. v. Bradley Enterprises, Inc.*, 256 Va. 288, 291 (1998) (emphasis added); *Mahoney v. NationsBank of Virginia*, 249 Va. 216, 222 (1995); *Winn v. Aleda Constr. Co.*, 227 Va. 304, 307 (1984). Moreover, the rule construing an ambiguous contract against the drafter is applied *before* considering whether extrinsic parol evidence resolves the ambiguity. *See Martin & Martin*, 256 Va. at 291 (affirming trial court decision to *exclude* extrinsic parol evidence after resolving a contractual ambiguity against the drafter).

For the purpose of resolving any ambiguity in the Contract salary term, the School Board is the drafter. Although the School Board contends in its opening brief that there is no evidence "that [the School Board] was the drafter of the [Contract]," Op. Br. 21, at oral argument the School Board conceded that the Contract is the School Board's form employment contract. Determining the drafter of a contract resolves a question of fact. *See Online Res. Corp. v. Lawlor*, 285 Va. 40, 57 (2013) (determining who drafted a contract is a question of fact). Therefore, the trial court's factual finding that the School Board drafted the Contract is a factual finding that will not be disturbed unless unsupported by evidence or clearly erroneous. *See Palmer v. R.A. Yancey Lumber Corp.*, 294 Va. 140, 158 (2017). Moreover, where a contract is a form contract, the contract is construed against the party who supplied the forms. *Blue Cross of Sw. Virginia & Blue Shield of Sw. Virginia v. McDevitt & St. Co.*, 234 Va. 191, 195 (1987).

Consequently, as concluded by the trial court, even if the Contract salary term is ambiguous, that term must be construed in favor of Lee. So construed, the School Board breached the Contract when it failed to compensate Lee in accordance with the stipulated salary for his six-month term. The remedy for a breach of contract "is intended to put the injured party in the same position in which it would have been had the contract been performed." *Bolton*, 299 Va. at 554 (quoting *Marefield Meadows, Inc. v. Lorenz*, 245 Va. 255, 261 (1993)). Accordingly, the trial court did not err in awarding Lee unpaid wages to accurately compensate Lee for services rendered to the School Board.

IV. The trial court did not err in denying the motion to modify or suspend the final order.

Finally, the School Board argues that the trial court erred in denying its motion to modify the effective date of the final order, or, in the alternative, to suspend the final order indefinitely. We review a trial court's denial of a motion to modify or suspend its final order for abuse of discretion.

In its motion to modify the trial court's order, the School Board asked the court to modify the effective date of the August 29, 2022 order to afford the School Board sufficient time to file and present argument in support of a motion for reconsideration. The School Board acknowledged that the trial court entered the final order on August 29, 2022, and directed the clerk to forward a certified copy of the order to the parties, but claimed that the School Board did not receive the order. The School Board further alleged that when it contacted the clerk's office on September 7, 2022, the clerk's office confirmed the final order's entry, but refused the School Board's request to expedite providing a copy of the order, instead sending the order by regular mail. The School Board argued that because it did not receive a copy of the order until September 12, 2022, it needed more time to prepare a motion for reconsideration that could be filed and heard within the 21-day jurisdictional limit of Rule 1:1, that would otherwise expire on September 19, 2022. The School Board concluded that the trial court should modify the effective date of the August 29, 2022 final order to September

- 20 -

7, 2022—the day the School Board first learned that the order was entered—to provide the School Board with an opportunity to be heard on a motion for reconsideration.

In denying the motion to modify, the trial court stated that it had informed the parties it would enter its order no later than August 31, 2022, and noted that the School Board did not check on the status of the order on August 31, 2022, rather waiting until September 7, 2022. The trial court found that the School Board then waited for the order to arrive in the mail, and upon receiving the order on September 12, 2022, waited three more days to file its motion to modify. The trial court concluded that the School Board was asking the court to create a "legal fiction" by asking it to modify the effective date of the final order and that the School Board's sole reason for asking the court to alter the date of entry of the final order was to extend the applicable deadlines and allow the School Board extra time for filings.

On appeal, the School Board acknowledges that the trial court issued an order requiring the clerk to forward a certified copy of its August 29, 2022 order to the parties, but argues that the record contains no proof that the order was sent to the parties on August 29, 2022. The School Board alleges that there was no envelope or document or indication that the order was mailed or forwarded on August 29, 2022. The School Board further alleges that the trial court's August 29, 2022 order was "secret" and "unissued," until the School Board actually received the order on September 12, 2022. In making these allegations, the School Board does not identify any supporting record evidence that would rebut, as previously explained, the heavy presumption that clerk's office personnel performed their duty by mailing the order and that the postal service performed its duty by delivering the order that was sent. *See Gilmore*, 252 Va. at 396; *Seaton*, 42 Va. App. at 757; *Branham*, 283 Va. at 282.

Although the School Board moved the trial court to modify the effective date of the final order or, alternatively, suspend the final order "indefinitely," so that the court would retain

jurisdiction under Rule 1:1 to hear and consider the School Board's motion for reconsideration, the School Board's written motion did not proffer a motion for reconsideration or state any grounds on which a motion for reconsideration would be based.  Under these circumstances, we cannot say that the trial court abused its discretion in denying the School Board's motion to modify.

CONCLUSION

For the foregoing reasons, this Court affirms the trial court's judgment.

*Affirmed*.