JUSTICE LEMONS
delivered the opinion of the Court.
In this appeal, we consider whether the trial court erred in finding the language of an agreement to provide health care coverage to Louise Roberts Eure (“Mrs. Eure”) unambiguous and in not considering parol evidence to determine the intent of the parties to the agreement. We further consider whether the trial court properly dismissed a holding company, United States Marine Repair, Inc., (“U.S. Marine Repair”) as a party in a suit against its subsidiary, Norfolk Shipbuilding & Drydock Corporation, Inc. (“Norshipco”).
I. Facts and Proceedings Below
Mrs. Eure entered into an agreement and general release (the “Agreement”) with Norshipco on April 3, 1992. The Agreement was part of a settlement of a debt owed to Norshipco by Charles H. Eure, Jr., Mrs. Eure’s deceased husband. As part of the Agreement, Mrs. Eure agreed to give up certain valuable rights and assets owed to her by Norshipco, and Norshipco agreed to provide Mrs. Eure with health care coverage at Norshipco’s expense for the remainder of her life.
Paragraph 2 of the Agreement provides for Mrs. Eure’s health care coverage and states in pertinent part:
Mrs. Eure will be afforded health care at Norshipco’s expense throughout her remaining lifetime, under the existing Norshipco health plan and any future enhancements available to key executives, or any replacement plan which provides to her coverage substantially equivalent to that which would be available if Mr. Eure were living and holding office as President of Norshipco.
*628 At the time the Agreement was made, Mrs. Eure was receiving benefits under two plans. Norshipco provided basic medical insurance through Blue Cross,[1] and also provided an “Officers’ Medical Expense Reimbursement Plan” (“reimbursement plan”) that paid for certain expenses Blue Cross did not cover.
U.S. Marine Repair acquired Norshipco in October of 1998. Mrs. Eure subsequently received a letter from John Humphreys of Norshipco informing her that as of December 15, 1998, the reimbursement plan was being terminated for all officers.
On February 18, 2000, Mrs. Eure filed an amended motion for declaratory judgment against both Norshipco and U.S. Marine Repair. She requested that the trial court declare:
[Tjhat the coverage promised [to her] under the provisions of paragraph 2 of the Agreement is to be determined by the coverage in effect at the time of the Agreement, and not be diminished or discontinued in part simply because the executive health plan at that time has subsequently been discontinued by Defendants.
Norshipco filed a motion for summary judgment and alleged that paragraph 2 of the Agreement was clear and unambiguous; therefore, the trial court should not consider parol evidence when interpreting the Agreement. In her brief in opposition to Norshipco’s motion for summary judgment, Mrs. Eure asserted that the Agreement “provides her with the medical coverage which was in effect at the time of the Agreement and that the coverage cannot be diminished or discontinued.” She maintained that “the agreement [was] clear in this respect.” The trial court denied Norshipco’s motion for summary judgment because it found that the Agreement was ambiguous. Norshipco subsequently renewed its motion for summary judgment, claiming that “discovery has established that the Plaintiff cannot point to any parol evidence or witness testimony which would clarify the meaning beyond the written words of the instrument.” The trial court again overruled the motion.
U.S. Marine Repair filed a demurrer, asserting that it bought the stock of Norshipco on September 30, 1998, and “in essence, is a holding company of the stock of Norshipco as an investor.” U.S. Marine Repair explained that Norshipco remains a freestanding legal *629 entity, and U.S. Marine Repair was not a party to the Agreement between Mrs. Eure and Norshipco.
The trial court allowed the introduction of parol evidence at trial to determine the intent of the parties with respect to the health care benefits clause of the Agreement. E. L. Carlyle (“Carlyle”), who was Senior Vice President and Chief Financial Officer of Norshipco in 1992 and signed the Agreement, testified on behalf of Mrs. Eure. In response to the question whether the health care benefits were “supposed to be retractable by Norshipco,” Carlyle testified that he “believe[d] it was the intent that Mrs. Eure was to have these benefits for the rest of her life.”
Furthermore, during cross-examination of Mrs. Eure, Norshipco admitted two letters into evidence. The first was a letter dated March 23, 1992, to Robert C. Nusbaum (“Nusbaum”), Mrs. Eure’s attorney, from Walter B. Martin, Jr. (“Martin”), Norshipco’s attorney. The letter outlined the “terms and conditions of the settlement” between Mrs. Eure and Norshipco. With respect to the health care coverage, the letter stated that “Mrs. Eure will be maintained under the Norshipco health care plan, or a plan providing equal coverage, until her death.” The second letter was the response from Nusbaum to Martin, dated March 27, 1992. In this letter, Nusbaum informed Martin that “Mrs. Eure and I interpret paragraph #2 of your March 23 letter to require the continuation of coverage of the kind now in force, or the substantial equivalent.”
Finally, Ellen Vinck (“Vinck”), Director and Vice President for U.S. Marine Repair, testified as to her interpretation of the Agreement. Vinck reviewed the Agreement at the time U.S. Marine Repair terminated the reimbursement plan. She testified that her “interpretation of the agreement was that Mrs. Eure should have medical coverage at any time as covered by the current plan, and she does. [Her coverage] was not canceled.” Vinck further testified that she believed that “the officers medical reimbursement plan [was] a perk.” She did not believe that canceling the reimbursement plan violated the Agreement because the basic coverage, under Sentara, was not canceled.
In a letter opinion, the trial court recognized that it had “previously held the [health care benefits] clause to be ambiguous, but on further consideration,” the trial court did “not believe it” was ambiguous; therefore, it did not consider the parol evidence in reaching its decision. The trial court interpreted the medical benefits provision of the Agreement as follows:
*630 The clause at issue allows a change in benefits but it must be under a “replacement plan which provides to her coverage substantially equivalent to that which would be available if Mr. Eure were living and holding office as President of Norshipco.” I find that the clause refers to future events, and that it ought to be construed as if Mr. Eure were the president of Norshipco at the time the replacement plan is provided. The term “replacement plan” in this context necessarily suggests a possible future event. The phrase “would be available” when used with “replacement plan” indicates a possible future condition. If the intent had been to require that a replacement plan be substantially equivalent to present coverage, a present tense verb, not a conditional tense, would have been used. Such an intent could have been stated “. . . coverage substantially equivalent to that which she now has.”
Accordingly, the trial court held that Norshipco was not required to continue to provide Mrs. Eure with the health care benefits under the company’s former reimbursement plan after the date that plan was terminated. The trial court further held that U.S. Marine Repair was not liable for the debts of Norshipco because there was “insufficient evidence to apply the alter ego doctrine.” Mrs. Eure subsequently filed a motion to reconsider, which the trial court overruled. On April 25, 2001, the trial court entered a decree memorializing its decision. Mrs. Eure appeals the adverse ruling of the trial court.
On appeal, Mrs. Eure argues that the language in the Agreement was ambiguous and the trial court should have considered parol evidence to determine the intent of the parties. She further argues that the trial court erred in ruling that Norshipco was not required to provide her with benefits “equivalent” to those provided under the former reimbursement plan. Finally, she claims that the trial court erred in dismissing U.S. Marine Repair as a party because Norshipco has no board of directors and operates under the direction of the chief operating officer of U.S. Marine Repair.
Norshipco maintains that the Agreement is unambiguous and the trial court correctly interpreted its plain meaning. Furthermore, Norshipco asserts that the trial court properly dismissed U.S. Marine Repair as a party because Mrs. Eure failed to demonstrate that Norshipco was merely the “alter ego” of the corporation.
*631 II. Standard of Review
This appeal presents questions of both law and fact. The question whether the language of a contract is ambiguous is a question of law which we review de novo. Langman v. Alumni Ass’n of the Univ. of Va., 247 Va. 491, 498, 442 S.E.2d 669, 674 (1994). Accordingly, on appeal we are not bound by the trial court’s interpretation of the contract provision at issue; rather, we have an equal opportunity to consider the words of the contract within the four corners of the instrument itself. Wilson v. Holyfield, 227 Va. 184, 187-88, 313 S.E.2d 396, 398 (1984).
The question whether the plaintiff introduced sufficient evidence to hold a parent company liable for the debts of its subsidiary is a question of fact. Beale v. Kappa Alpha Order, 192 Va. 382, 399, 64 S.E.2d 789, 798 (1951). Accordingly, we will only reverse the finding of the trial court if it is plainly wrong or without evidence to support it. W.S. Carnes, Inc. v. Board of Supervisors, 252 Va. 377, 385, 478 S.E.2d 295, 301 (1996).
III. Analysis
As a preliminary matter, the dissent maintains that consideration of Mrs. Eure’s argument concerning parol evidence is barred by application of Rule 5:25. Even Norshipco does not make this argument.
In Mrs. Eure’s opposition to Norshipco’s motion for summary judgment she first argued that the language of the Agreement was unambiguous; however, she further asserted that if the trial court found the Agreement to be ambiguous, then she should be permitted to introduce parol evidence to clarify the intent of the parties. The trial court considered the issue of ambiguity, twice ruled that the language of the Agreement was ambiguous, and permitted the introduction of parol evidence at trial before reversing its prior rulings and finding the language of the Agreement unambiguous. On appeal, Mrs. Eure maintains that the language of the Agreement is ambiguous and that the unrefuted parol evidence introduced at trial supports her interpretation of the Agreement.
The purpose of Rule 5:25 is “to protect the trial court from appeals based upon undisclosed grounds, to prevent the setting of traps on appeal, to enable the trial judge to rule intelligently, and to avoid unnecessary reversals and mistrials.” Fisher v. Commonwealth, 236 Va. 403, 414, 374 S.E.2d 46, 52 (1988), cert. denied, 490 U.S. 1028 (1989). None of the aforementioned concerns exists in the pres *632 ent case. Having ruled on the issue three times, the trial court clearly had the opportunity “to rule intelligently” on the issue. This case hardly presents an appeal on undisclosed grounds. Rule 5:25 does not bar Mrs. Eure from asserting before this Court that the language in the Agreement is ambiguous and that the trial court should have considered the parol evidence presented below.
When an agreement is plain and unambiguous on its face, the Court will not look for meaning beyond the instrument itself. Ross v. Craw, 231 Va. 206, 212, 343 S.E.2d 312, 316 (1986). However, when a contract is ambiguous, the Court will look to parol evidence in order to determine the intent of the parties. Aetna Cas. and Sur. Co. v. Fireguard Corp., 249 Va. 209, 215, 455 S.E.2d 229, 232 (1995). Contract language is ambiguous when “it may be understood in more than one way or when it refers to two or more things at the same time.” Granite State Ins. Co. v. Bottoms, 243 Va. 228, 234, 415 S.E.2d 131, 134 (1992). However, “[a] contract is not ambiguous merely because the parties disagree as to the meaning of the terms used.” TM Delmarva Power, L.L.C. v. NCP of Virginia, L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002).
On appeal, Mrs. Eure maintains that the Agreement “means that for the remainder of her lifetime, she would receive, at Norshipco’s expense, the benefits existing at the time of the execution of the contract, as well as any additional benefits Norshipco might subsequently add to its coverage.” Norshipco argues that “the replacement plan contemplated by the Agreement was one which Mr. Eure would be entitled to if he were living and holding office as the President of Norshipco at the time of the contemplated replacement of the plan.”
In order to determine whether the language is ambiguous, we look at the words at issue within the four comers of the Agreement itself. Wilson, 227 Va. at 188, 313 S.E.2d at 398. Upon independent review of the Agreement, we hold that the Agreement is ambiguous on its face.
The language used in the health care provision can be interpreted in more than one way. The Agreement provides health care coverage to Mrs. Eure under the existing plan, “or any replacement plan which provides to her coverage substantially equivalent to that which would be available if Mr. Eure were living and holding office as President of Norshipco.” By its terms, the clause could either mean that any replacement plan coverage must be equal to the coverage being provided when the Agreement was signed, or that any replacement plan coverage must be equal to that which Mr. Eure *633 would receive as President of Norshipco at the time any replacement plan is instituted. Accordingly, the clause providing health care benefits is ambiguous and the trial court erred in failing to consider parol evidence.
We note that, in the same paragraph, a further ambiguity appears. Norshipco assumes the responsibility for providing “reasonable security for the ongoing performance of its obligations hereunder after the liquidation or dissolution of Norshipco or any change of control.” The word “hereunder” modifies “obligations,” but the phrase does not explain to which obligations it refers. The clause can be interpreted to provide security for the health care benefits obligation which appears in the same paragraph, or it can be interpreted to provide security for the deferred compensation payments which are included in paragraph 1 of the Agreement, or it can be interpreted to provide security for both health care benefits and deferred compensation benefits. If the obligation to provide security for ongoing performance of obligations is concerning health care benefits, there is an obvious conflict in the juxtaposition of language that posits Mr. Eure as President of Norshipco under circumstances where it is contemplated that Norshipco is liquidated or dissolved. These different interpretations and inherent conflicts demonstrate ambiguity in the Agreement.
Having determined that the language in the Agreement is ambiguous, we will next consider the parol evidence presented at trial. In response to the question whether Mrs. Eure’s benefits could be retracted by Norshipco, Carlyle testified that “it was the intent that Mrs. Eure was to have these benefits for the rest of her life.” Furthermore, two letters written prior to the execution of the Agreement indicated that Mrs. Eure was to receive coverage equal to “the kind ... in force,” at the time the Agreement was signed. The only evidence that supported Norshipco’s interpretation of the Agreement was the testimony of Vinck. However, Vinck was not a party to the Agreement; therefore, her testimony consisted solely of her personal interpretation of the Agreement and did not reveal the intent of the parties at the time the Agreement was entered. Accordingly, the parol evidence in favor of Mrs. Eure’s interpretation of the Agreement was unrefuted at trial.
On this record, we hold that the trial court erred in finding the language of the Agreement unambiguous and in failing to consider the parol evidence that was presented. At trial, both parties had the opportunity to introduce parol evidence. In light of the unrefuted *634 parol evidence in support of Mrs. Eure’s interpretation of the Agreement, we hold that Norshipco breached the Agreement when it terminated the reimbursement plan benefiting Mrs. Eure.
Finally, Mrs. Eure argues that the trial court erred in dismissing U.S. Marine Repair as a party. She claims that “U.S. Marine offered no evidence to demonstrate that Norshipco was an entity independent of U.S. Marine’s control.” Mrs. Eure has misstated the allocation of the burden of proof on this issue.
In Beale v. Kappa Alpha Order, 192 Va. at 396-97, 64 S.E.2d at 797, we stated that:
‘Before the corporate entity may be properly disregarded and the parent corporation held liable for the acts of its subsidiary ... it must be shown not only that undue domination and control was exercised by the parent corporation over the subsidiary, but also that this control was exercised in such a manner as to defraud and wrong the complainant, and that unjust loss or injury will be suffered by the complainant as the result of such domination unless the parent corporation be held liable.’
(Citation omitted). The separate corporate entities of corporations will be observed by the courts unless a corporation is shown to be the “adjunct, creature, instrumentality, device, stooge, or dummy of another corporation.” Id. at 399, 64 S.E.2d at 798. Generally, courts will observe the separate corporate entity, even though one corporation “may dominate or control another, or may treat it as a mere department [or] instrumentality . . . and courts will disregard the separate legal identities of the corporation only when one is used to defeat public convenience, justify wrongs, protect fraud or crime of the other.” Id. (citation omitted). Accordingly, Mrs. Eure had the burden to provide facts sufficient to demonstrate that Norshipco was merely the “alter ego” of U.S. Marine Repair in order for the trial court to disregard the corporate form and hold U.S. Marine Repair liable for the obligations of Norshipco.
To support her assertion that U.S. Marine Repair controls Norshipco, Mrs. Eure relies upon the deposition testimony of Alexander Krekich, a senior officer at U.S. Marine Repair, who stated that Norshipco does not have a board of directors. Mrs. Eure also points to an application for a letter of credit for her benefit, wherein the applicant is listed as “United States Marine Repair, Inc. for acct of Norfolk *635 Shipbuilding & Drydock Corporation.” According to Mrs. Eure, if U.S. Marine Repair was not controlling Norshipco, “there would be no reason for it to be involved in obtaining the letter of credit” for Mrs. Eure.[2]
The evidence presented by Mrs. Eure was not sufficient to allow the trial court to disregard the corporate form. Mrs. Eure failed to present evidence that Norshipco was the “alter ego” of U.S. Marine Repair; therefore, the trial court did not err in dismissing U.S. Marine Repair as a party when the underlying lawsuit concerned an Agreement entered into between Mrs. Eure and Norshipco.
In its Final Decree, the trial court rendered judgment in favor of U.S. Marine Repair, which judgment will be affirmed. The trial court declared that the Agreement does not require Norshipco to continue to provide benefits to Mrs. Eure under its former Officers’ Medical Expense Reimbursement Plan, which declaration shall be reversed and judgment will be entered in favor of Mrs. Eure. The remaining provisions of the Final Decree are not before us on appeal and will remain unaffected by our decision.

Affirmed in part, reversed in part, and final judgment.

 The basic coverage provider was subsequently changed to Sentara.

 We note that the evidence presented at trial demonstrated that U.S. Marine Repair is “strictly the holding company” of Norshipco, its subsidiary. Furthermore, U.S. Marine Repair never assumed the obligations of Norshipco.