COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, White and Senior Judge Annunziata

GEORGE SCHIANO, ET AL.

v.     Record No. 0377-23-4

FALKLAND FARM ESTATES
  HOMEOWNERS ASSOCIATION, INC.

MEMORANDUM OPINION[*]
PER CURIAM
SEPTEMBER 16, 2025

FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
James A. Willett, Judge

(George Schiano; Carrie Schiano, on briefs), *pro se*.

(Robin M. Cole; Lauren A. Ritter; Chadwick, Washington, Moriarty,
Elmore & Bunn, PC, on brief), for appellee.

The Falkland Farm Estates Homeowners Association (the "Association") sued George

and Carrie Schiano seeking unpaid annual assessments and attorney fees. After two separate

juries found in the Association's favor on both issues, the circuit court awarded the Association

contractual damages and attorney fees. The Schianos appeal and, finding no error, we affirm the

circuit court's judgment.[1]

I.  BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the prevailing party at trial," in this case, the Association. *Norfolk S. Ry.

Co. v. Sumner*, 297 Va. 35, 37 (2019).

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Having examined the briefs and record in this case, the panel unanimously agrees that
oral argument is unnecessary because "the facts and legal arguments are adequately presented in
the briefs and record, and the decisional process would not be significantly aided by oral
argument." *See* Code § 17.1-403(ii)(c); Rule 5A:27(c).

A.  The Association

The Association is a Virginia non-stock corporation incorporated in October 1980 by the developers of the Falkland Farm Estates subdivision in Prince William County.  The Association is governed by its governing documents, including its Articles of Incorporation, Bylaws, and certain Covenants and Restrictions affecting the lots within the subdivision.  As pertinent here, the Articles empower the Association to exercise all powers and perform all duties and obligations set forth in the Bylaws, as well as to "fix, levy, collect and enforce payment" of assessments; and "acquire . . . own, hold, . . . maintain, convey, . . . transfer, . . . or otherwise dispose of real or personal property in connection with the affairs of the Association."  The Articles also provide that every "record owner of a fee or undivided fee interest in any Lot is subject by covenants of record set forth in the Declaration to assessment by the Association" and that membership in the Association is "appurtenant to and may not be separated from ownership of any Lot which is subject to assessment by the Association."  Finally, the Articles provide that "[t]he corporation shall exist perpetually."

The Bylaws empower the Association to enforce the Covenants and Restrictions, and obligate members to "pay to the Association annual and special assessments."  Under the Bylaws, the Association's Board has the duty to "make reasonable efforts to cause the roadways to be maintained," to fix the amount of annual and special assessments, and to take appropriate action "to effect collection of delinquent assessments."  In addition, the Bylaws contain the following provision:

> [I]n the event that the Association files suit against any Member to enforce the terms of the Covenants and Restrictions, Articles of Incorporation, By-laws or rules and regulations adopted pursuant thereto, including but not limited to the collection of assessments, the Association is entitled to an award of its costs incurred if it prevails in such a suit, including and without limitation, reimbursement for costs and reasonable attorneys' fees.

In 1984, the Association assumed control of the subdivision from the developers and was deeded ownership of the private roads traversing the subdivision. Since then, the Association has been responsible for the maintenance and repair of the roads in the subdivision, including Falkland Drive.

The Association's corporate status lapsed in 2009 when it failed to file an annual report with the State Corporation Commission. Its Board discovered the lapse in 2017, upon which it reincorporated in April 2017. However, throughout the period of lapse it continued to operate, including maintaining the subdivision's private roads. In January 2020, Association Board members Everett Willis, Jr. and Anthony Carpino, acting as trustees in dissolution for the terminated corporation, deeded three of the subdivision's private roads including Falkland Drive to the Association in its new corporate incarnation.

### B. The Schianos

In 2014, George Schiano acquired a property entitled "Lot Sixty-Two (62), Section Two (2), FALKLAND FARMS ESTATES" ("Lot 62") by special warranty deed. By the terms of that deed, the "conveyance [wa]s made subject to easements, conditions and restrictions of record insofar as they may lawfully affect the [p]roperty." The conveyance was also subject to "the provisions for road maintenance as set forth in the Deed recorded in the Clerk's Office aforesaid in Deed Book 1135, Page 776" (the "1980 Deed").

Under the 1980 Deed, by which Lot 62 and various other lots were transferred to the developer, the developer and its successors and assigns agreed "that the maintenance of the roadways on which this property fronts is not a public responsibility," and "agree[d] to pay its pro rata share of the costs of maintenance and snow removal of and from the private roads." The 1980 Deed further provided that the developer and "its heirs or assigns . . . further understands

- 3 -

that the maintenance and snow removal of and from the private roads shall not be the responsibility of Prince William County or the State of Virginia."

Lot 62 is also subject to 21 recorded Covenants and Restrictions. Pertinent to this appeal, Restriction No. 17 ("Restriction 17") provides that "[a]ll owners of property adjoining private subdivision roads will be required to join [the] Home Owners Association, except" the owners of a parcel described as "4 and 50 acres known as Falkland," and that "[e]ach lot owner" as well as their "[]heirs, devisees, and assigns [are] to be bound to contribute his share of the cost of the maintenance of the roadway in the subdivision and will pay [the] same immediately after receiving notice of the amount due." As members of the Association, the owners of Lot 62 are also subject to the Bylaws.

In 2016, George transferred title to the lot by quitclaim deed from himself individually to him and his wife Carrie as tenants by the entirety.

### C. The Lawsuit

The Schianos eventually stopped paying their annual assessments, beginning with the assessment made as of December 31, 2017, that was due in July 2018.

In 2021, the Association filed a warrant in debt against the Schianos to collect the unpaid assessments totaling $2,150.[2] The Schianos failed to appear, and the district court entered a default judgment for the Association. The Schianos appealed to the circuit court, and the matter was set for a jury trial. The Schianos filed a demurrer, a motion for a bill of particulars, and a motion craving oyer. After a hearing, the circuit court overruled the demurrer but granted the motions for a bill of particulars and craving oyer.

---

[2] The circuit court later granted the Association's motion to increase the *ad damnum* to $2,900 to account for unpaid assessments that had accrued since the original filing.

In its bill of particulars, the Association raised claims for breach of contract, unjust enrichment, and quantum meruit. The Schianos demurred to the breach of contract claim, and in the alternative, moved for an amended bill of particulars. They argued, among other things, that the Association had not pleaded the elements for a breach of contract, that the Bylaws were not valid or enforceable, and that the Association was not entitled to attorney fees. After a hearing, the circuit court overruled this demurrer as well.

The Association filed a motion for partial summary judgment as to its authority to levy and collect assessments for road maintenance costs; it also filed four separate motions *in limine* to limit the Schianos' testimony as to the Association's private roads, the Association's corporate status, the absence of bridle trails in the subdivision, and a prior suit between the parties.[3] The Schianos filed a "Motion for Summary Judgment or in the Alternative, In Limine of the Plaintiff's Proposed Evidence."

At a June 9, 2022 hearing on the six motions, the circuit court denied the Association's motion relating to bridle trails, and granted its motions regarding private roads and the prior case. The court denied the motion relating to the Association's corporate status "at this time," but noted that the admissibility of evidence on that issue would be "for the trial judge to decide." The court also granted the Association's motion for partial summary judgment, holding that the Association "has lawful authority to levy assessments to be paid by the owners of property within the subdivision for their share of the cost of the maintenance of the roadway in the subdivision." Finally, the court denied the Schianos' motion.

Five days before trial, the Association moved to bifurcate the issue of attorney fees should it prevail. The Association requested "that the Court determine the matter of costs and

---

[3] The Association's first attempt to collect the unpaid assessments, an action to enforce liens recorded against Lot 62 under the Virginia Property Owners Association Act (POAA), Code §§ 55.1-1800 through -1837, had been dismissed with prejudice.

attorneys' fees through a signed Declaration submitted to the Court, or, in the alternative, through briefing and oral argument by the parties." The court entered an order granting the Association's motion to bifurcate on September 15, 2022. The Association also moved to strike the Schianos' exhibits and exhibit list for failure to comply with the circuit court's scheduling order, which the court also granted.

On the first day of trial, the Schianos moved for a continuance, and the circuit court rescheduled the trial for October 3, 2022.

### D. Trial on the Merits

Trial commenced on October 3, 2022. Carrie testified that George had acquired Lot 62 in 2014 and that their family had resided there since 2016. She further testified that the only access to their home on Lot 62 is via Falkland Drive, one of the private roads owned and maintained by the Association.

Anthony Carpino, who had served on the Association's Board since 1984, testified that the Association had continuously functioned since 1980, even during the lapse in its corporate status. He explained that Association members are subject to a "road maintenance assessment fee" to cover their annual share of road maintenance costs. At the time of trial, the Schianos owed $2,900 in unpaid assessments for 2018, 2019, 2020, and 2021.

Carpino noted that the 1980 Deed expressly lists Lot 62 as among those subject to the Covenants and Restrictions. He further explained that, apart from the parcel identified as "4 and 50 acres known as Falkland," membership in the Association is mandatory for "[a]ll owners of property adjoining private subdivision roads" under the 1980 Deed. The Association understands lots "adjoining private subdivision roads" to mean whose only access is via one of the private roads; lots that are accessible directly from public roads are not deemed to be

"adjoining" the private roads. The Association voted to adopt this construction in 1985, as a continuation of the developer's previous practice and precedent.

Carpino explained that "4 and 50 acres known as Falkland" is a parcel containing a stone dwelling known as the "Falkland Manor House." Per Paragraph 17 of the Covenants and Restrictions, the owner of "4 and 50 acres known as Falkland" is exempt from Association membership. At no time in Carpino's knowledge was Lot 62 ever part of "4 and 50 acres known as Falkland." He pointed out the disparate locations of the two properties on a subdivision plat, noting that Lot 62 is "basically landlocked" and "not even close to the 4 and 50." The Association introduced six deeds impacting Lot 62, none of which made that lot part of "4 and 50 acres known as Falkland."

The Schianos moved to strike all three counts, arguing that the Association had proven neither an express nor an implied contract between the parties. The circuit court denied the motion as to the breach of contract claim, but granted it with respect to the unjust enrichment and quantum meruit claims.

At the conclusion of the Schianos' case, they renewed their motion to strike, which the circuit court denied. The Association then moved for partial summary judgment as to the issue of its corporate status. The circuit court granted the motion, holding that "the law's quite clear that [the Association] can operate as a corporation or as an unincorporated entity" and finding as a matter of law that the Association is "the same entity which entered into or is an alleged party to the contract with the Schiano[s]."

The jury returned a verdict for the Association in the amount of $2,900.

### E. Attorney Fees

On November 4, 2022, the circuit court held a hearing to address the Association's claim for attorney fees. The Schianos asserted that, in addition to determining their liability for

- 7 -

attorney fees and the amount thereof, "a jury [wa]s required to determine whether either defendant [wa]s a party to the contract" giving rise to the Association's claim for attorney fees. The circuit court noted that the existence of a contract between the parties had "already been decided." It also ruled that the Association had established "a sufficient contract . . . to obviate the operation of the American Rule," and awarded the Schianos a jury trial "on the question of the amount and reasonableness" of the Association's attorney fees. The court set trial for one day on January 3, 2023.

The Association requested a new pretrial scheduling order pertaining to the attorney fee trial. The Schianos objected that such an order already existed, alluding to the scheduling order for the October 2022 trial. The court explained: "This is a new trial. You get a new scheduling order." The Schianos responded that they objected to the new schedule because they had "objected to the bifurcation of the trial," but conceded that they would be able to comply with it.

The circuit court entered an order finding "that the Association is entitled to an award of its reasonable fees," and ordered a jury trial on the "sole issue" of the reasonableness of those fees. The Schianos noted an objection to the order without specifying which aspects they found objectionable or explaining why.

At the attorney fee trial on January 3, 2023, attorney Michael Gartner testified as an expert in the field of community associations law on the subject of the reasonableness of attorney fees incurred in suits by homeowners' associations to collect fees and assessments. He testified that the Association's attorneys' rates were "very reasonable and consistent with litigation of community association matters in Northern Virginia." He testified further that the Schianos' "[e]xtraordinarily vigorous" defense increased the Association's litigation costs, as forcing the Association to respond to the issues they raised not only took "a significant amount of time," but also "increase[d] the complexity of the case."

The jury returned a verdict in favor of the Association, awarding it $140,005.43 in attorney fees. This appeal followed.

## II. ANALYSIS

The Schianos bring 19 assignments of error forward in their opening brief.[4] Of these, many are procedurally defaulted: two for which the record is insufficient to permit appellate review[5]; four that were not preserved below[6]; and seven that were insufficiently addressed in the opening brief.[7] However, six of the Schianos' assignments of error are properly before this

---

[4] Of the 54 designated assignments of error, the Schianos' second amended opening brief contains only assignments 1-3, 5, 15, 16, 23, 26, 28, 29, 31, 33, 36, 37, 39, 45, 46, 49, and 54.

[5] The issues relating to assignments of error 1 and 2 were argued at hearings held on January 28, 2022, and May 27, 2022. But the Schianos have failed to file a transcript or written statement of facts related to these hearings. *See* Rule 5A:8(b)(4)(ii). "Without th[ese] transcript[s], we do not know what evidence and argument, if any, were presented to the circuit court," *McDonald v. Nat'l Enters.*, 262 Va. 184, 195 (2001), or the circuit court's reasoning for its ruling, or whether the issues were properly preserved. *See* Rule 5A:18. "The burden is upon the appellant to provide [the appellate court] with a record which substantiates the claim of error. In the absence [of a sufficient record], we will not consider the point." *Dixon v. Dixon*, 71 Va. App. 709, 716 (2020) (alterations in original) (quoting *Robinson v. Robinson*, 50 Va. App. 189, 197 (2007)).

[6] Assignments of error 23, 26, 28, and 29 all concern the circuit court's acceptance of the Association's jury instructions. But the Schianos failed to object to each instruction individually and instead offered a blanket objection to all the Association's jury instructions, despite the circuit court's warning that this was an improper objection. "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Baez v. Commonwealth*, 79 Va. App. 90, 107 (2023) (quoting *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019)). "A general argument or an abstract reference to the law is not sufficient to preserve an issue." *Id.* (quoting *Edwards v. Commonwealth*, 41 Va. App. 752, 760 (2003) (en banc)). These issues are therefore waived.

[7] The Schianos' opening brief contains minimal, if any, argument or authority relating to assignments of error 3, 31, 33, 45, 46, and 49. And their sole argument with respect to assignment of error 54 is supported only by conclusory statements and a single irrelevant case rather than any coherent legal analysis, authority, or argument. Rule 5A:20(e) requires that the appellant's opening brief contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." "Statements unsupported

Court, and they present three core issues: whether a valid contract exists between the parties; whether the Association has standing to enforce that contract; and whether the circuit court's award of attorney fees was proper.

## A. Validity of the Contract

The Schianos argue that the circuit court erred in granting the Association's motion for partial summary judgment on its authority to levy assessments for road maintenance costs. They argue that the evidence failed to prove that there was a legally enforceable contract between the parties, because the term "4 and 50 acres known as Falkland" is ambiguous and the Association failed to prove that Lot 62 was not a part of that parcel. Thus, according to the Schianos, they are exempt from membership in the Association.

"The power exercised by [a property owners'] Association is contractual in nature and is the creature of the . . . documents to which all unit owners subjected themselves in purchasing their [lots]. It is a power exercised in accordance with the private consensus of the unit owners." *Unit Owners Assoc. v. Gillman*, 223 Va. 752, 766 (1982); *see American Realty Trust v. Chase Manhattan Bank, N.A.*, 222 Va. 392, 403 (1981) ("[W]here parties have entered into more than one document relating to a business transaction, 'these documents should be interpreted together, each one assisting in determining the meaning intended to be expressed by the others.'" (quoting *J.M. Turner & Co. v. Delaney*, 211 Va. 168, 171 (1970))). "The question whether the language of a contract is ambiguous is a question of law which we review de novo." *Robinson-Huntley v. George*

---

by argument, authority, or citations to the record do not permit appellate consideration." *Parks v. Parks*, 52 Va. App. 663, 664 (2008) (quoting *Cirrito v. Cirrito*, 44 Va. App. 287, 302 n.7 (2004)). "[W]here a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Blankenship v. Commonwealth*, 71 Va. App. 608, 623 n.2 (2020) (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017)). Because we find that the Schianos' arguments with respect to these assignments of error are significantly deficient, these issues are therefore waived.

*Wash. Carver Mut. Homes Ass'n*, 287 Va. 425, 429 (2014) (quoting *Eure v. Norfolk Shipbuilding & Drydock Corp.*, 263 Va. 624, 631 (2002)).

"When an agreement is plain and unambiguous on its face, the Court will not look for meaning beyond the instrument itself. However, when a contract is ambiguous, the Court will look to parol evidence in order to determine the intent of the parties." *Id.* (quoting *Eure*, 263 Va. at 632). "[A] contract is not ambiguous merely because the parties disagree as to the meaning of the terms used." *Id.* (quoting *Eure*, 263 Va. at 632). Where contractual language is ambiguous, "[t]he plaintiff then bears the burden of proving that the parties intended the meaning that results in a breach of contract by the defendant." *Id.* "Whether the plaintiff has met that burden is a question of fact, and 'we will only reverse the finding of the trial court if it is plainly wrong or without evidence to support it.'" *Id.* at 429-30 (quoting *Eure*, 263 Va. at 631).

Here, the Bylaws, Articles of Incorporation, Covenants and Restrictions, and relevant deeds "collectively represent a contract entered into by all owners" of lots included in the Association. *Sully Station II Community Ass'n v. Dye*, 259 Va. 282, 284 (2000). The Bylaws define "member" as "those persons entitled to membership provided in the Articles of Incorporation and the Covenants and Restrictions." The Articles provide that membership in the Association is "appurtenant to and may not be separated from ownership of any Lot which is subject to assessment by the Association." Further, the Articles make every "record owner of a fee or undivided fee interest in any Lot . . . subject by covenants of record set forth in the Declaration to assessment by the Association." Under those covenants, Restriction 17 requires that all owners of "property adjoining private subdivision roads" join the Association, "except 4 and 50 acres known as Falkland." And Carrie testified that Lot 62 is accessed only via Falkland Drive. Because Lot 62 meets the longstanding definition of "adjoining private subdivision roads," and because the

- 11 -

Schianos are record owners of that lot, they are subject to the covenants and therefore to annual assessment by the Association.

Even assuming that an ambiguity exists as to the meaning of "4 and 50 acres known as Falkland," the Association met its burden of establishing the meaning of that term and whether it includes or refers to Lot 62. Carpino used a subdivision plat to illustrate the boundaries of Lot 62 and "4 and 50 acres known as Falkland," demonstrating that they are two separate and distinct properties. Six different deeds all described Lot 62 but did not make it part of "4 and 50 acres known as Falkland." In fact, Lot 62 is "not even close to the 4 and 50" parcel. We therefore will not revisit the jury's determination that Lot 62 is not related to "4 and 50 acres known as Falkland."

The Schianos also argue that the Association insufficiently pleaded its breach of contract claim. We disagree. "The office of pleadings is to give notice to the opposing party of the nature and character of the claim." *Boyd v. Boyd*, 2 Va. App. 16, 19 (1986). "Under Virginia's notice pleading regime," a pleading "shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense." *Allison v. Brown*, 293 Va. 617, 624 (2017) (quoting Rule 1:4(d)). The Association's pleading meets this standard. Citing the Articles of Incorporation, Bylaws, and Covenants and Restrictions, the Association alleged in its bill of particulars that the Schianos "are the record co-owners of Lot 62" which adjoins a private subdivision road; that they are members of the Association by virtue of their ownership of that lot; that as members they are obligated to pay assessments for road maintenance; and that the Association is empowered to enforce payment of such assessments, as well as to recover attorney fees incurred as a result of such enforcement. The bill of particulars is drafted so that the Schianos "cannot mistake the true nature" of the Association's claims against them, and is thus sufficient. *Id.* (quoting *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24 (1993)).

The Schianos' argument that the Association lacks privity with the developer also carries no weight. The right of enforcement of restrictive covenants "depends not upon privity of contract, but upon the intention of the parties imposing them." *Meagher v. Appalachian Electric Power Co.*, 195 Va. 138, 148 (1953). "Whether or not third persons, not parties to the instrument, are within its purview, is one of intention, and this intention may appear either from the instrument alone, or from the instrument with the aid of the surrounding facts and circumstance." *Id.* at 148-49 (quoting *Cheatham v. Taylor*, 148 Va. 26, 34 (1927)). "It is elementary that when language in a deed or other instrument is to be construed, '[t]he grantor's intention, as expressed in the instrument, must prevail unless contrary to some principle of law or rule of property.'" *Allen v. Green*, 229 Va. 588, 593 (1985) (alteration in original) (quoting *Austin v. Dobbins*, 219 Va. 930, 936 (1979)).

In the 1980 Deed, the subdivision's developer agreed on behalf of itself and its "successors and assigns" that it "assume[d] and agree[d] to pay its pro rata share of the costs of maintenance and snow removal of and from the private roads." The Deed further provided that the "land is conveyed subject to" the Covenants and Restrictions, which require the owner of Lot 62 to be a member of the Association and to pay annual assessments for road maintenance. George took title to Lot 62 "[subject to] the provisions for road maintenance as set forth in" the 1980 Deed. Though he included no such language when he deeded Lot 62 to himself and Carrie, they both "had constructive notice of" the terms of the 1980 Deed "because it formed a part of their vendor's chain of title." *Allen*, 229 Va. at 594. For these reasons, the Schianos are contractually bound by the Covenants and Restrictions and the Association's governing documents, including the Bylaws and Articles of Incorporation.

## B. Standing

The Schianos also argue that the Association's lapse in corporate status rendered the Bylaws and Articles of Incorporation invalid and unenforceable as a contract and that therefore the

Association lacks standing to sue them for unpaid assessments.[8] This argument is misplaced, with respect to the Schianos' liability for unpaid assessments, because the Association was reincorporated in April 2017 and the Schianos' failure to pay their assessments began with those made as of December 31, 2017. So the period for which the Schianos owe unpaid assessments was a period where the Association did in fact exist, with all the powers and duties given to it under the Articles of Incorporation, Bylaws, and Covenants and Restrictions, including the power to levy and collect annual assessments.[9]

The Schianos further argue that the current corporation does not have proper title to the roads, and therefore lacks standing to enforce the Covenants concerning road maintenance and related assessments. But under Code § 13.1-915, when a nonstock corporation's existence is involuntarily terminated, "the properties and affairs of the corporation shall pass automatically to its

---

[8] The Schianos assert that, because the Bylaws and Articles of Incorporation were invalid, "the only possible contract was the declaration which was recorded in the land records and ran with the non-exempt lots," but that "proving that the Schianos' [sic] breached the declaration required first establishing that Lot 62 was not '4 and 50 acres known as Falkland' which," in their view, "was not done." But the jury and the circuit court found that both the breach and the identity of Lot 62 as separate from "4 and 50 acres known as Falkland" were proven, and "[t]he trial court's judgment is presumed to be correct, and we will not set it aside unless the judgment is plainly wrong or without evidence to support it." *Syed v. Zh Techs., Inc.*, 280 Va. 58, 68 (2010) (quoting *Xspedius Mgmt. Co. v. Stephan*, 269 Va. 421, 424-25 (2005)). Because there was ample evidence supporting the judgment on this point, the Schianos' concession that the Covenants and Restrictions could themselves form the basis of a contract is fatal to their claims.

[9] We note further that, even if the assessments were levied during the period of lapse in the Association's corporate status, under the POAA, the definition of a property owners' association includes either "an incorporated *or unincorporated* entity upon which responsibilities are imposed and to which authority is granted in [its] declaration." Code § 55.1-1800 (emphasis added). In turn, "declaration" means any recorded instrument that either "imposes on the association maintenance or operational responsibilities for the common area," or gives the association the authority to "impose on lots [or] on the owners or occupants of such lots . . . mandatory payment of money in connection with the provision of maintenance or services for the benefit of some or all of the lots, the owners or occupants of the lots, or the common area." *Id.* In this case, the Association's governing documents fall within the definition of a "declaration," meaning it could continue operating as an unincorporated entity during the lapse period.

directors as trustees in liquidation," who are empowered to distribute the corporation's assets in accordance with Code § 13.1-907. Those assets are to be transferred or conveyed to a "corporation . . . or organization[] engaged in activities substantially similar to those of the dissolving corporation." Code § 13.1-907(A)(3). Here, the trustees in dissolution did exactly that when they transferred title to the private roads to the Association in its current form.[10] Accordingly, the Association has standing to sue the Schianos for unpaid assessments.

### C. Attorney Fees

The Schianos challenge the award of attorney fees on several grounds: they rely on the American Rule, argue that they are not bound by the provision in the Bylaws providing for attorney fees, and assert that the circuit court failed to comply with Rule 3:25(d) in determining the procedure by which attorney fees would be established.

Under the American Rule, "generally, absent a specific contractual or statutory provision to the contrary, attorney's fees are not recoverable by a prevailing litigant from the losing litigant." *Lee v. Mulford*, 269 Va. 562, 565 (2005) (quoting *Mullins v. Richlands Nat'l Bank*, 241 Va. 447, 449 (1991)). "However, parties are free to draft and adopt contractual provisions

---

[10] The Schianos also invoke Article VII of the Articles of Incorporation, which provides for voluntary dissolution, to support their contention that the Association lacks standing to pursue this litigation. This argument is without merit. Article VII provides that the "Association may be dissolved with the assent given in writing and signed by the unanimous . . . class of members" upon which "the assets of the Association shall be dedicated to an appropriate public agency to be used for the purposes similar to those for which this Association was created." But because the Articles also state that the Association is to exist perpetually, and only explicitly mention voluntary dissolution, we must construe the document as a whole. *See First Am. Bank v. J.S.C. Concrete Constr., Inc.*, 259 Va. 60, 69 (2000) (noting that "when two provisions of a contract appear to be mutually conflicting, they should be reconciled if a reasonable basis for reconciliation is afforded by the instrument's language"). So construed, the Articles only contemplate conveyance of the roads to a public entity upon a voluntary dissolution of the corporation, not involuntary termination. Additionally, the Articles echo the language of Code § 13.1-907(A)(3) by providing that, in the event the public entity refuses acceptance, "such assets shall be granted, conveyed and assigned to any nonprofit corporation, association, trust or other organization to be devoted to such similar purposes" as the Association.

shifting the responsibility for attorneys' fees to the losing party in a contract dispute." *Ulloa v.*

*QSP, Inc.*, 271 Va. 72, 81 (2006). Where, as here, a contract "provided for attorney's fees, but

did not fix the amount thereof, a fact finder is required to determine from the evidence what are

reasonable fees under the facts and circumstances of the particular case." *Mullins*, 241 Va. at

449. In addressing that question, the fact finder may consider, inter alia:

> the time and effort expended by the attorney, the nature of the
> services rendered, the complexity of the services, the value of the
> services to the client, the results obtained, whether the fees
> incurred were consistent with those generally charged for similar
> services, and whether the services were necessary and appropriate.

*Ulloa*, 271 Va. at 82 (quoting *Chawla v. BurgerBusters, Inc.*, 255 Va. 616, 623 (1998)).

"Ordinarily, expert testimony will be required to assist the fact finder." *Mullins*, 241 Va. at 449.

"The amount of the fee award rests within the sound discretion of the trial court, and we give

deference to the judgment of the trial court upon appellate review." *Ulloa*, 271 Va. at 82.

Here, the Bylaws set forth the Association's right to recover attorney fees incurred in a suit

to enforce the Covenants and Restrictions, Articles of Incorporation, and Bylaws. The Bylaws were

in effect at the time the Association initiated the present suit. "Ordinarily, nonstock corporations

and their members are controlled by the corporate bylaws," and "courts apply the bylaws in

resolving disputes between those parties." *Virginia High Sch. League v. J.J. Kelly High Sch.*, 254

Va. 528, 531 (1997). The "by-laws adopted by a voluntary association constitutes a contract

between the members, which, if not immoral or contrary to public policy, or the law, will be

enforced by the courts." *Gottlieb v. Econ. Stores, Inc.*, 199 Va. 848, 856 (1958) (quoting *Bradley v.*

*Wilson*, 138 Va. 605, 612 (1924)). Accordingly, "the rules used to interpret statutes, contracts, and

other written instruments are applicable when construing corporate bylaws." *Virginia High Sch.*

*League*, 254 Va. at 531 (quoting 8 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private*

*Corporations* § 4195 (perm. ed. rev. vol. 1992)).  Thus, a contract exists between the parties here that renders the American Rule inapplicable.

The Schianos counter that they never agreed to be bound to the Bylaws or Articles of Incorporation, so "there could be no breach."  But as noted above, the Schianos' obligation to be members of the Association is plainly set forth in their chain of title, and they are deemed to be on notice of that fact.  *Allen*, 229 Va. at 594.  In addition, "[t]hey were charged not only with notice of facts expressly stated in the recorded instruments, but also with other 'matters therein suggested which might be disclosed upon prudent inquiry,'" *id.* (quoting *Chavis v. Gibbs*, 198 Va. 379, 382 (1956)), including both the Articles of Incorporation and the Bylaws.  They "had a duty to inquire as to sources of information reasonably disclosed by matters of record."  *Id.*  As such, the Schianos ignored the "express reservations in their chain of title," as well as "matters therein suggested" including the Bylaws's provision for the Association's recovery of attorney fees, "at their peril."  *Id.*

We turn next to the Schianos' claim that the circuit court erred in the procedure by which it established their liability for attorney fees.  "Upon the motion of any party, the court must, or upon its own motion, the court may, in advance of trial, establish a procedure to adjudicate any claim for attorney fees."  Rule 3:25(d).  However, "it is often appropriate to delay the issue of awarding attorney's fees until the disposition on the merits reveals which party has actually prevailed, and on which claims."  *Lambert v. Sea Oats Condo. Ass'n*, 293 Va. 245, 260 (2017).  "That is why Rule 3:25(d) allows a trial court to establish a procedure before trial for deciding attorney's fees in cases where they may be awarded."  *Id.*

Here, almost three weeks before trial, the court entered an order granting the Association's motion to bifurcate the issue of attorney fees, which requested "that the Court determine the matter of costs and attorneys' fees through a signed Declaration submitted to the Court, or, in the alternative, through briefing and oral argument by the parties."  Thus, the circuit court, in its

pretrial order, effectively adopted the procedure proposed by the Association to establish fees by declaration or briefing and oral argument.  "It is well established in this Commonwealth that a circuit court speaks only through its written orders," *Roe v. Commonwealth*, 271 Va. 453, 457 (2006), and by granting the Association's motion without further comment, the circuit court effectively adopted the procedure the Association requested.  Thus, contrary to the Schianos' assertion, the circuit court did establish, pretrial, a procedure for deciding attorney fees.[11]

### III.  CONCLUSION[12]

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[11] While the court ultimately did depart from the previously-established procedure by empaneling a jury to determine attorney fees, it was the Schianos who asked that the question be decided by a jury.  So even assuming that the court ran afoul of Rule 3:25(d) by departing from its original order, the Schianos waived that issue under the approbate and reprobate doctrine, which bars them from "taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory."  *Cangiano v. LSH Bldg. Co.*, 271 Va. 171, 181 (2006).  Having insisted on a jury trial on the question of attorney fees, rather than the procedure established before trial in accordance with Rule 3:25(d), the Schianos cannot now fairly complain that the court did not follow the rule.

[12] To the extent any motions filed by the parties have not been previously adjudicated, they are dismissed.